HAWTHORNE, Justice.
On November 6, 1956, the electors of this state approved a proposed constitutional amendment adding Section 3(c) to Article 14 of the Louisiana Constitution of 1921. This constitutional amendment provides for the creation of a Jefferson Parish Charter Commission and grants to the people of Jefferson Parish the power to establish, in a manner therein provided, a government for the parish and the several municipal corporations and the other public subdivisions and districts situated therein. On June 13, 1957, the Twenty-fourth Judicial District Court for the Parish of Jefferson rendered a judgment decreeing that Section 3(c) of Article 14 of the Constitution was thereby “declared to be unconstitutional, null and void, and of no effect”. This appeal was taken from that judgment.
The instant suit was brought under the Louisiana Declaratory Judgments Act, R.S. 13:4231-4246, by Joseph Lucas, a resident taxpayer of Jefferson Parish, who sought the judgment obtained. In the alternative he prayed that if the constitutional amendment were decreed to be valid, the court would decide whether the fifteenth member of the Jefferson Parish Charter Commission was Donald E. Bone, the appointee of the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area, or Jacob J. Amato, the appointee of the newly formed Jefferson Parish Chamber of Commerce.
Named as defendants in the suit were the members of the Jefferson Parish Charter Commission; the newly formed Jefferson Parish Chamber of Commerce and its appointee Jacob J. Amato; and the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area and its appointee Donald E. Bone. After judgment was rendered in the lower court, 18 resident taxpayers of Jefferson Parish intervened in the suit, and in due course they and the defendants were granted an appeal to this court.
We are at a loss to know for what reasons and on what grounds the trial judge declared the constitutional amendment here under attack to be null and void. However, the opponents of the amendment in brief filed in this court contend mainly that the proposition to amend the Constitution by adding Subsection (c) to Article 14, Section 3, was enacted in violation of Article 21 of the Constitution of this state relative to amending the Constitution, in that the proposition was not concurred in by both houses of the Legislature.
Article 21 of the Constitution, insofar as may be pertinent and necessary for a determination of the issues thus presented, provides:
*901 “Section 1. Propositions for amending the Constitution may be made by the Legislature at any session, and if two-thirds of the members elected to each House shall concur therein, after such proposed amendment, or amendments have been read in both houses on three separate days, such proposed amendment or amendments, together with the yeas and nays thereon, shall be entered on the journal * *
The constitutional amendment here under attack had its inception by the introduction into the House of Representatives of House Bill No. 1471, and so far as may be necessary for a decision here the legislative history of this bill is as follows:
On June 3, 1956, House Bill No. 1471 was introduced into the Louisiana House of Representatives. The House calendar describes this bill as a joint resolution proposing an amendment to Article 14 of the Constitution of Louisiana in order to provide for the creation of a Charter Commission for the Parish of Jefferson and to authorize the establishment of a plan of government for that parish. On July 5, 1956, 31 amendments to the bill were adopted in the House. These 31 amendments, as disclosed by the reengrossed bill, were incorporated in the bill by striking out the portions of the bill which had been changed and typing on the wide margin of the engrossed bill the amendments which the House had adopted, thus reengrossing the bill. On July 8, 1956, the original bill as thus amended was read the third time in full, passed with 78 yeas and 15 nays, and ordered to the Senate.
The official endorsements on reengrossed House Bill No. 1471 show that on July 9, 1956, the amended bill which had passed the House the day before was received in the Senate; that this bill as amended in the House was read in the Senate on three separate dates as required by the Constitution; that on July 11 after its third reading it was passed with 28 yeas and 7 nays and ordered to the House; that on July 11 it was received by the House from the Senate without amendments, duly enrolled, signed in open session without delay by the Speaker of the House and the President of the Senate, and sent to the Governor for executive approval.
On July 12, 1956, the Governor signed House Bill No. 1471, which became Act 631 of 1956, and that same day it was filed in the Office of the Secretary of State. On November 6, 1956, it was ratified by the electorate, and on November 20, 1956, it was declared adopted by proclamation of the Governor, thus becoming Article 14, Section 3(c), of the Louisiana Constitution of 1921.
A photostatic copy of reengrossed House Bill No. 1471 with the official endorsements *903 thereon, certified by the Secretary of State to be true and correct, is in the record as Plaintiff Exhibit 2. This document establishes beyond any question that House Bill No. 1471 as amended in the House was concurred in by two-thirds of the members elected to each house after having been read in both houses on three separate days.
The regularity of the House proceedings in the adoption of House Bill No. 1471 are not questioned. The following entries in the Senate Journal serve as the basis of this attack on the validity of the constitutional amendment: The Senate Journal shows that House Bill No. 1471 was received from the House by the Senate on July 9; this entry identifies the bill by title only, but this title as entered in the Senate Journal is the title of the original bill and not the title of the amended bill adopted by the House. Furthermore, the original bill without any amendments, and not the amended one adopted by the House, was entered in full on the Senate Journal. It is argued that these journal entries prove that only the original bill without the amendments was considered by the Senate; in other words, that one bill was passed by the House of Representatives and another distinct and entirely different bill was passed by the Senate; that therefore the constitutional mandate requiring the concurrence of two-thirds of the elected membership of both houses on the same bill was not complied with.
In short, the basis of the attack here made on the validity of Article 14, Section 3(c), of the Louisiana Constitution is that this constitutional amendment was incompletely entered on the 1956 Senate Journal, in that it appeared in its original and not in its amended form, and that this erroneous entry on the Senate Journal is fatal to the validity of the constitutional amendment in that it establishes a presumption that the Senate never passed Act 631 of 1956 in the form in which it was submitted to the people of Louisiana for ratification and adopted by them as an amendment to the state Constitution.
Concededly, if the Senate never passed House Bill No. 1471 as amended by the House, there would be merit to opponents’ argument, for a proposed constitutional amendment must be concurred in by two-thirds of the members elected to each house. Section 1, Article 21, La.Const. of 1921. However, the photostatic copy of reengrossed House Bill No. 1471, with the 31 House amendments interlined thereon and the history of its progress through the House and the Senate officially endorsed thereon, shows beyond question that the Senate received House Bill No. 1471 as amended and passed this bill as amended by a vote of two-thirds of the members elected to that body.
Under the jurisprudence of this court the provision of Section 1 of Article *905 21 of the Constitution requiring that a proposed amendment to the Constitution be “entered on the journal” does not mean that the proposed amendment must be published in full in the journal, and a substantial compliance with the requirements of this section is sufficient. East Jefferson Waterworks District No. 1 v. Caldwell & Co., 170 La. 326, 127 So. 739.
In the case of Saunders v. Board of Liquidation of City Debt, 110 La. 313, 314, 34 So. 457, 464, this court said:
“An entry in the journals of character such as to clearly identify the matter brought up each time with that ultimately adopted as a whole should seem to meet the legal or constitutional requirements. There is no particular requirement as to the form of this entry.” (Italics ours.)
In the Saunders case this court quoted with approval part of the opinion of the Kansas Supreme Court in a case entitled Constitutional Prohibitory Amendment Cases, 24 Kan. 700, wherein it was contended that an amendment to the Kansas Constitution had not been constitutionally adopted as it did not appear in full upon the journal of either house. It is at once apparent that in this particular the Kansas case is analogous to the one at bar. In the Saunders case we quoted from the Kansas opinion thus:
“The Constitution provides that the ‘proposed amendments, together with the yeas and nays, shall be entered on the journal.’ Const.Kan. art. 14, § 1. Is the failure to enter this amendment at length on the journals fatal? It is well said by counsel that no change can be made in the fundamental law except in the manner prescribed by that law. * * * The two important, vital elements in any constitutional amendment are the assent of two-thirds of the Legislature and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because by them certainty as to the essentials is secured. But they are not themselves essentials. Take a strong illustration: The Constitution requires that the ‘Secretary of State shall cause the same to be published in at least one newspaper in each county of the state where a newspaper is published, for three months preceding,’ etc. Suppose a unanimous vote of both houses of the Legislature and a unanimous vote of the people in favor of a constitutional amendment, but that the secretary had omitted to publish in one county in which a newspaper was published, would it not be simply an insult to common sense to hold that thereby the will of the Legislature and people had been defeated? Is it within the power of the secretary either through ignorance or design to thwart the popular decision? Is he *907 given a veto, or can he create one? This may be an extreme case, but it only illustrates the principle. The records of the proceedings of the two houses are made, not by the houses themselves, but by clerical officers. True, they are under the control of the respective houses, but in fact the records are made by clerks. May they defeat the legislative will? The Constitution does not make amendments dependent upon their approval or their action. To insure certainty and guard against mistake, journal evidence of the amendment and votes is prescribed; but this is mere matter of evidence, and not the substantial condition of constitutional change. * * * ”
In the recent case of Miller v. Greater Baton Rouge Port Commission, 225 La. 1095, 74 So.2d 387, 389, an amendment to the state Constitution was attacked as invalid on the ground that the joint resolution proposing the amendment was never set forth in full on the journals of the House and the Senate. In our decision in that case we said:
“All that Section 1 of Article 21 of the Constitution requires is that a reference sufficiently identifying the amendment proposed to be acted upon be entered on the Journals.”
In the instant case the Senate Journal entry of July 9, after showing that the usual formalities of opening the Senate had been complied with, discloses:
“The following messages from the House of Representatives were received and read:
“Message from the House Asking Concurrence in House Bills and Joint Resolutions
“House of Representatives
“State Capitol
“State of Louisiana
“Baton Rouge, La.
“July 8, 1956.
"To the Honorable Lieutenant Governor and President of the Senate and Members of the Senate of the State of Louisiana:
“I am directed to inform your honorably [sic] body that the House of Representatives of the State of Louisiana has finally passed and asks your concurrence in the following entitled House Bills and Joint Resolutions, to-wit:
“House Bill No. 1471—
“By Messrs. Beeson and Rau. * * * ” (Italics ours.)
Then follows the title to House Bill No. 1471 as originally introduced in the House and prior to its amendment.
This particular entry, to us, is sufficient to establish that what the House was sending to the Senate for its concurrence was House Bill No. 1471 as amended which *909 had been finally passed by the House; and although the bill’s title was not entered on the Senate Journal in its amended form, nevertheless the above entry shows that the House was sending to the Senate for its concurrence an amendment to Article 14 of the Constitution relative to parochial and municipal affairs, to be designated 3(c), providing for the creation of a Charter Commission for the Parish of Jefferson and authorizing the establishment of a plan of government for that parish, etc.
We think that this entry in the journal, under our jurisprudence, was sufficient to clearly identify the proposed amendment and was a substantial compliance with the requirements of Article 21, Section 1, of the Louisisana Constitution. The same is true of the later Senate Journal entry which set out in full the original title and bill without the amendments.
In the instant case we therefore conclude that the Senate Journal entries sufficiently identify the proposed constitutional amendment which was passed by the Senate as House Bill No. 1471 in its amended form, and these entries, all as set out above, clearly show that the proposition for amending the Constitution was concurred in by two-thirds of the elected members of the Senate, was read on three separate days in that body, and that the proposed amendment which had been passed by the House, together with the yeas and nays thereon, was entered on the Senate Journal.[1] Consequently there is no merit in the contention that the House passed one bill and the Senate passed an entirely different bill thus violating the provisions of Article 21, Section 1, that a proposed constitutional amendment must be concurred in by two-thirds of the members elected to each house.
The opponents of the constitutional amendment cite and rely principally on the cases of Graham v. Jones, 198 La. 507, 3 So.2d 761, and State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72, 77.
Graham v. Jones is cited for the proposition that the provisions of Article 21 of the Constitution regulating amendments to the Constitution are mandatory and not merely directory. We have no quarrel with this principle of law, but it has no application in the instant case because, as we have found, the requirements of Article 21 have been fully met.
State ex rel. Porterie v. Smith is cited for the proposition that “The official Journals of the House and Senate, when published and preserved, constitute the ultimate proof of verity of the proceedings. No extrinsic proof is admissible for the purpose of contradicting the facts therein recited”. *911 This proposition is without application under the facts of the instant case as our holding in no way impeaches the recitals of the Senate Journal of any fact which the Louisiana Constitution requires to he entered therein. See Art. 21, Sec. 1, La.Const. of 1921; Saunders v. Board of Liquidation of City Debt, supra.
The only other attack made in this court on Article 14, Section 3(c), is that it is incapable of execution and therefore fatally defective because it specifically requires a Charter Commission of 15 persons but only sets up appointive authority for 14 persons for the reason that there was no Jefferson Parish Chamber of Commerce in existence when Article 14, Section 3(c), was adopted, and because the appointive power of the Charter Commission itself could only be exercised if one or more of the named appointive authorities failed to act timely.
Article 14, Section 3(c) pertinently reads as follows:
“There is hereby created in the said Parish a Jefferson Parish Charter Commission consisting of fifteen persons, who are residents and qualified voters of the said Parish and who shall be appointed in the following manner:
“Three to be appointed by the Police Jury of Jefferson Parish; * * * one each by the following: * * * Jefferson Parish Chamber of Commerce * *
The Chamber of Commerce of the New Orleans Area was formed in 1949. Between 1951 and 1954 the West Bank Council and the East Bank Council of the Chamber of Commerce of the New Orleans Area were established to handle problems arising in Jefferson Parish, and by the end of 1956, 571 corporations, businesses, and persons who either resided or had their places of business in Jefferson Parish belonged to the West and East Bank Councils.
No organization styled “Jefferson Parish Chamber of Commerce” existed when the proposed amendment was passed by the Legislature. On November 15, 1956, the directors of the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area, acting on the reasonable assumption that they were the “Jefferson Parish Chamber of Commerce”, held a joint meeting and voted to appoint Mr. Donald E. Bone to the Jefferson Parish Charter Commission.
On November 9, 1956, after the proposed constitutional amendment had been ratified by the people, a corporation was formed which called itself the "Jefferson Parish Chamber of Commerce”. At a meeting held by this new organization on December 11, 1956, Mr. Jacob J. Amato *913 was appointed as a member of the Jefferson Parish Charter Commission.
This court has frequently said that it is the function of the courts to interpret the laws so as to give them the connotation the lawmaker obviously intended and not to construe them so rigidly as to give them preposterous or odd meanings. Where a literal interpretation would produce absurd consequences, the statute must be construed so as to produce a reasonable result. Dore v. Tugwell, 228 La. 807, 84 So.2d 199, and cases there relied on.
From the testimony of the authors of House Bill No. 1471, who were representatives from Jefferson Parish, and the exhibits filed in evidence in this case by the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area, it seems clear that a chamber of' commerce had been functioning in Jefferson Parish for several years, and that this fact was known to the authors of the bill; that they had in mind a then existing chamber of commerce in Jefferson Parish and not one to be formed in the future; and that therefore the words “Jefferson Parish Chamber of Commerce” in Article 14, Section 3(c), refer to the chamber of commerce then functioning in Jefferson Parish — that is, the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area.
As there was a chamber of commerce in Jefferson Parish when Article 14, Section 3(c), was adopted, the appointment of Donald E. Bone by that body was proper and completed a Charter Commission of IS members.
Other alleged grounds of invalidity besides those we have discussed were raised in the lower court. Though these are not urged before us, we have nevertheless considered each and find no merit in any of them.
The trial court decided this case in plaintiff’s favor on his main plea, the invaliditv of the amendment. Since we are reversing that judgment, under ordinary circumstances we would remand the case to the lower court so that it might consider plaintiff’s alternative plea for a decision of whether the fifteenth member of the Jefferson Parish Charter Commission is Donald E. Bone, the appointee of the East and West Bank Councils of the Chamber of Commerce of the New Orleans Area, or Jacob J. Amato, the appointee of the newly formed Jefferson Parish Chamber of Commerce. However, in the instant case a remand would be vain and useless. In deciding that the amendment was not fatally defective because incapable of execution, we necessarily found that the appointment made by the East and West Bank Councils of Donald E. Bone was legal and proper, and this decision of ours makes any further consideration of the alternative plea totally unnecessary.
The judgment appealed from is annulled, reversed, and set aside, and plaintiff’s suit is dismissed at his costs.