HAMLIN, Justice.
Under our supervisory jurisdiction (Art. VII, Sec. 11, La.Const., 1921, L.S.A.) Cer-tiorari to the Court of Appeal, Fourth Circuit, was granted in these consolidated cases, in order that we might review judg- *411 merits of the Court of Appeal[1] which dismissed the suit of William L. Klause, Jr. and ordered the Clerk of Court for the Parish of Jefferson to cancel from the conveyance records of his office, particularly from C.O.B. 421, Folio 615, the recordations of certain documents insofar as they covered and affected Lots 28, 29, 57, and 58, Block 7, Metairie Terrace Subdivision, Parish of Jefferson, State of Louisiana. The Court' of Appeal reversed judgments of the trial court, which decreed William L. Klause, Jr., to be the owner of that portion of the four lots not used for highway purposes and quieted his title thereto and dismissed the petition for mandamus of the State of Louisiana on the relation of the Attorney General and the Register of the State Land Office.
We reiterate the pertinent facts herein as found by the Court of Appeal:
“Lots 28, 29, 57 and 58 of Square 7, Metairie Terrace, Parish of Jefferson, were adjudicated to the State on December 31, 1935 (C.O.B. 127 folio 285) for unpaid state taxes for 1934 on an assessment to Funk, and said property has never been redeemed from said tax sale.
“On August 21, 1937 (C.O.B. 138 folio 153) Thrift Homestead Association acquired the property from Funk at foreclosure sale.
“On December 6, 1937 (C.O.B. 139 folio 256) Louisiana Highway Commission by conventional deed acquired said property from Thrift Homestead Association in Liquidation, for a cash consideration of $700.[2]
“After acquiring said property, as aforesaid, the Louisiana Highway Commission entered a work order on April 9, 1938, for the construction of the Airline Highway (U.S. 61) across and to include all of lots 28 and 29 except a strip of approximately five feet along the southern end thereof. In 1938, upon completion of the project, the Airline Highway, aforesaid, included such property.
“By Acts 1942, No. 4, §§ 4 and 7, the Department of Highways became the legal successor of the Louisiana Highway Commission and succeeded to the ownership of all the property, movable and immovable, owned by said late Louisiana Highway Commission.
“On April 1, 1947, the Department of Highways granted a long term lease to the Louisiana Department of Public Safety, covering Lots 57 and 58, and the small strip of Lots 28 and 29 that was not included in the highway project. The Department of Public Safety became the lessee for the purpose of maintaining and using said property as a State Police Troop Headquarters. Since 1947 the Department of Public Safety has exercised possession of said leased premises entirely and to the exclusion of anyone else.
“On March 27, 1957, at a Sheriff’s sale (C.O.B. 421 folio 615) conducted under LSA-R.S. 47:2189, William L. Klause, Jr., purchased the four lots aforesaid from the State for $300 and was issued Patent No. 18,592, dated April 4, 1957 (C.O.B. 421 folio 615).
“In January 1959 William L. Klause, Jr., filed this suit against the State of Louisiana, through the Department of Highways seeking to confirm and quiet, under LSA-R.S. 47:2228.1, his alleged title to that portion of the property which is not a part of Airline Highway, which suit the Department of High *412 ways defends on the ground that the sale and patent are null and void because embracing land that it owns which had previously been dedicated to a public purpose and was not susceptible to sale.
“In April 1959 the State of Louisiana, on the relation of its Attorney General and Register of State Land Office, filed suit for mandamus against Klause and the Clerk of Court for the Parish of Jefferson, seeking to have cancelled and erased from the Conveyance Records the inscriptions of the Sheriff’s sale and the patent issued to Klause, on the ground that the property is unsusceptible to private ownership.”
The conclusion of the Court of Appeal was to the effect that the Register of the State Land Office had not the power to cause to be sold property owned by the Department of Highways; it found that, “Klause’s pretended title and patent are null and void. The Legislature never contemplated that LSA-R.S. 47:2189 would authorize the sale of property which a department of the State owns and has dedicated to public uses.”
Relator Klause assigns the following specification of errors:
“The Court of Appeal erred when it predicated its entire decision on the basis that the Register of the State Land Office had no authority to sell the subject property to plaintiff Klause under R.S. 47:2189.[3]
“The Court of Appeal erred when it held that the five-year peremption period set out in Article 10, Section 11, of the Constitution of 1921 does not apply to the tax title of the plaintiff in this cause.”
The surrounding facts of the sale and transfer of Lots 28, 29, 57 and 58, Block 7, Metairie Terrace Subdivision, by the Sheriff and Ex-Officio Auctioneer for Jefferson Parish, Louisiana, to William L. Klause, Jr., are to the effect that on January 6, 1957, Klause applied in writing to the Register 'of the State Land Office and requested that she advertise for sale said lots; he stated that the lots went to the state under Tax Bill #1488-8 for 1934 taxes in the name of Mrs. Ethel H. Funk. Pie also requested that property belonging to Ramon Hanson and adjudicated to the State for 1930 taxes be advertised for sale. In accordance with LSA-R.S. 47:2189, he enclosed his check for $70.00 as evidence of good faith in the application
The Register of the State Land Office caused to be advertised, the sale of the property herein involved, and the Sheriff of Jefferson Parish sold it at auction. Klause was the highest bidder (consideration, $300.00) and was issued Patent No. 18,592 of the State of Louisiana to the property, which patent was signed by the Governor and the Register of the State Land Office on April 4, 1957.
Klause, who testified that he had been Clerk of .Court for the Parish of Jefferson up until 1956, was at the time of trial a Member of the Jefferson Parish Real Estate Board; he stated that at the time he made application to have the property advertised and sold, he was in the furniture and appliance business and was buying and selling real estate for himself. His pertinent testimony is as follows:
“Q. Did you have any knowledge, prior to the time you applied to the State for the placing of the property up at auction, that this property had *413 been transferred by Ethel Funk to the Thrift Homestead?
“A. I did.
“Q. Did you also know that the property was transferred by the Thrift Homestead to the Louisiana Highway Commission by act before John F. Stafford ?
“A. I did.
“Q. But you still persisted in placing it up for sale under LSA-Revised Statutes 47:2189; is that correct?
“A. Yes.”
Klause testified that as of January, 1959, the value of the land he was claiming was more than $10,000.00 on an open market.
Further pertinent testimony of Klause is as follows:
“Q. Mr. Klause, I ask you whether or not, when you made application for the advertisement for the sale of the property by the State, you knew that Lots twenty-eight (28) and twenty-nine (29) were a part of Highway Sixty-one (61) ?
“A. I did.
“Q. Did you or did you not know at the same time, that there was a State Troopers Headquarters building on the property?
“A. At the time I applied I did not know that the State Troopers Headquarters was setting on this particular piece of property — -I mean the building itself. At that time I did not know that.”
When asked how he went about acquiring the property, Klause testified:
“I was scanning the State Tax Rolls and happened to run across these particular lots in the Metairie Terrace Subdivision. At the time when I first saw them, I did not know exactly where they were located but I knew they were in Metairie Terrace Subdivision, and I ran the chain of title and found they were in the State— and I frequently buy State tax property. After I ran the title, from my knowledge of running titles I assumed the tax sale was a good title; and before I requested the State Land Office to advertise the property I looked at the map and located the property, and I took a ride to the location on the Airline Highway where it is located, and looked at it.”
The Assistant Register of the State Land Office, Robert J. Lacey, testified that he held the same position when Klause made application for the sale of the property herein involved; that under the procedures followed, he had no way of knowing that the property had been transferred to the Highway Department by Thrift Homestead. He stated that, “The Register can, under R.S. 47:2189, after the passage of the three (3) year redemption period from the date of recordation of that sale to the State by the parish, if an application is made requesting us to offer the property for sale, the office checks the Proces Verbal in the files to see if the property has previously been sold or leased or encumbered in any manner whatsoever, and if the record shows it is not sold or encumbered in any way we then request the sheriff of the parish, if he has no objection, to offer the property at public sale.” Lacey further stated that the Register of the State Land Office keeps an inventory and has custody of land adjudicated to the State. In effect, Lacey testified that encumbrances brought to the attention of his department were noted on adjudications, but that his department did not solicit or look for information concerning encumbrances. He said that when the instant property was sold by the Sheriff of Jefferson Parish, the Land Office had no knowledge that the property was in commerce, or that it had been put back in commerce after the sale and later transferred by the State to the Louisiana Department of Highways. Lacey further testified that property was sold without warranty, and that the transfer was only *414 of the interest the State had by adjudication, subject to the redemption by the tax debtor.
Pertinent testimony of Lacey is as follows :
“Q. What do you mean when you use the word ‘clear’ ? When you say you ‘check to see if it is clear,’ what do you mean?
“A. I mean when I check the copy of the proces verbal. If there are no encumbrances, we offer it for sale.
“Q. Just what do you mean by encumbrances ?
“A. Well, suppose the property had been leased by them, or is subject to a servitude, or we sold it to a department of the State, or something of that nature.
“Q. Then it would be sold subject to that encumbrance; is that correct?
“A. Certainly.
* Hc * * * *
“Q. The State had acquired the property in the name of Thrift Homestead; is that right?
“A. Prior to the transfer to the State Highway Department, by Thrift Homestead Association.
“Q. When the State purchases property in the name of a tax debtor, as in this case when they purchased it in the Thrift Homestead Association’s name for 1934 taxes in 1935, is it the procedure of your office to know what happens to the property by the tax debtor after it is adjudicated to the State?
“A. No, sir.
“Q. In no case or instance is the State concerned with what the tax debt- or does after it is adjudicated to the State ?
“A. No, sir.
“Q. It is not their duty to ascertain what happens to the property after it is adjudicated to the State?
“A. No, sir.
“Q. In other words, there is not much discretion that the Register of the State Land Office has in these matters ? He has to follow the word of the statute ; is that correct ?
“A. Why, certainly.”
The Louisiana Highway Commission purchased the instant property under the authority of Article VI, Section 19, of the Louisiana Constitution of 1921,[4] and Act 95 of the Extra Session of 1921, as amended. These authorities empowered the Highway Commission to expropriate and acquire property for highways and drains and all other purposes for building and maintaining highways; no unrelated purposes were expressed. The act of sale before John F. Stafford, Notary Public, on December 6, 1957, by Thrift Homestead Association in Liquidation to the Highway Commission, appearing through J. P. McCullough, Right-of-way Engineer, duly authorized per resolution of the Louisiana Highway Commission, dated March 3rd, 1931, does not state that the purchase was for highway purposes. It is self-evident, however, that this was the only reason for which the property could have been and was purchased, the Highway Commission not being authorized to engage in the business of buying and selling real estate — the real estate business.
Lots 28 and 29, except five feet thereof, were immediately employed for the construction of the Airline Highway; it was constructed and is in existence today. Once in use and operation, the highway became a public thing and was no longer susceptible of private ownership. See, West’s LSA- *415 Civil Code, Article 453 et seq.; cf. Locke v. Lester, La.App., 78 So.2d 14; Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222. The assent of the State of Louisiana to such use was presumed. Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418; City of Cincinnati v. The Lessee of White, 6 Pet. 431, 31 U.S. 431, 8 L.Ed. 452; City of Shreveport v. Walpole, 22 La.Ann. 526. These predicates of law are admitted by plaintiff since he makes no claim to Lots 28 and 29, except to the small five foot strip not used for highway purposes.
Plaintiff would have us concern ourselves only with Lots 57 and 58 and the unused five foot strip of Lots 28 and 29. However, the sale was an entirety, and our determination shall apply to it as a whole. The agreement between the Department of Highways and the Department of Public Safety states that the Department of Public Safety binds itself to return the property to the Department of Highways within thirty days from the date of written notice reciting that the property is needed by the Department of Highways for its uses and purposes. This provision of the agreement L decisive of the fact that the entire property was purchased for highway purposes; the Department of Highways has never abandoned its intention of using it for such purposes.
It is incumbent upon us to ascertain the Legislative intent in the enactment of LSA-R.S. 47:2189. “The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.” LSA-C.C, Article 18. The primary rule of construction of statutes is to determine legislative intention. Drew Manual T. School v. Calcasieu Nat. Bank, 192 La. 790, 189 So. 137. A construction making harsh and unjust the operation of a statute is to be avoided if possible. Houghton v. Hall, 177 La. 237, 148 So. 37; Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163. The objects and purposes of a law are to be weighed in its interpretation. State ex rel. Blaise v. City of New Orleans, 142 La. 73, 76 So. 244. “It is the duty of the coürt to ascertain the meaning of the Legislature and to attach to its acts a rational and beneficial meaning, if possible, rather than irrational and injurious one.” State ex rel. Porterie v. Louisiana Highway Commission, 179 La. 395, 154 So. 36. The court must ascertain the intention of the Legislature and give effect thereto, regardless of how broad and comprehensive-may be language employed by statute; the court also has the duty to restrain operation of a statute within narrower limits than its words import, if the court is satisfied that their literal meaning would extend to cases which Legislature never intended to include. In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464; State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385. The function of the courts is to interpret the laws so as to give them the meaning which the lawmaker obviously intended them to have, and not to construe them so rigidly as to give them absurd or ridiculous meanings. State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Webb v. Parish Council, 217 La. 926, 47 So.2d 718. “The safest rule of interpretation is to look to the nature and object of the particular powers, duties and rights with all the lights and aid of contemporaneous history, and to give to the words such operation and force consistent with their legitimate purposes as may fairly secure and attain the ends proposed.” State v. Roberson, 225 La. 74, 72 So.2d 265. Where a statute is ambiguous and susceptible of two constructions, courts will give that construction which best comports with the principles of reason, justice,' and convenience. State v. Randall, 219 La. 578, 53 So.2d 689. “This court has frequently said that it is the function of the courts to interpret the laws so as to give them the connotation the lawmaker obviously intended and not to construe them so rigidly as to give them preposterous or odd meanings. Where a literal interpretation *416 would produce absurd consequences, the statute must be construed so as to produce a reasonable result. Dore v. Tugwell, 228 La. 807, 84 So.2d 199, and cases there relied on.” Lucas v. Berkett, 233 La. 896, 98 So. 2d 229.
An examination of the provisions of LSA-R.S. 47:2189, which state, “Whenever any person desires to purchase any unredeemed property bid in for and adjudicated to the state for unpaid taxes,” in the light of the above rules of statutory construction, leads us to conclude that the Legislature did not mean unredeemed property such as Lots 28, 29, 57, and 58, which were purchased by an agency of the State [5] for highway purposes and part of which were actually under a highway at the time the patent was issued.[6] To say that the State could issue a patent to such lands as are herein involved would lead to absurd consequences and would give a preposterous meaning to the ■statute. We find that this is an occasion where there must be an interpretation of a statute within a more narrow limit than that set out in its literal language.
West’s LSA-Civil Code, Article 1797, provides that when parties have the legal capacity to form a contract, the next requisite to its validity is their consent. Article 1819 states that consent, being the concurrence of intention in two or more persons with regard to a matter understood by all, reciprocally communicated, may be vitiated by error. Error as applied to contracts is •of two kinds, namely, fact and law. Article 1820. “That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.” Article 1821.
It is an axiom of the law that public officers are presumed to do their duty in the interest of the State and its people. Certainly the Register of the State Land Office would not have caused the sale of the instant property, had she or her assistants known that (as aforesaid) it had been purchased for highway purposes and a portion thereof had become a part of the Airline Highway. The consent secured for the sale was a consent secured through error of fact. “Consent produced by error of fact is not legal consent.” Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635. Because of the fact that the sale to the Department of Highways was in the name of Thrift Homestead Association and not in that of Funk, the Register had no way of knowing of the sale. This knowledge was in Klause; he did not reveal it to the Register of the State Land Office; he suppressed it.'[7]
We find that under the circumstances of this case, the consent to the sale of Lots 28, 29, 57, and 58 by the Register of the State Land Office on the application of Klause was not legal consent; it was illegal because of error of fact on the part of herself and her assistants. See, Lopez v. McAdam, 7 La.Ann. 58; Coco v. Nolin, La.App., 56 So.2d 204; Calhoun v. Teal, 106 La. 47, 30 So. 288.
Because of the reasons set forth above, we conclude that Patent No. 18,592 of the State of Louisiana, dated April 4, 1957, was a nullity; and, that the peremptive rights provided for in Article! X, Section 11, of the *417 Louisiana Constitution of 1921, do not apply to the instant sale of Lots 28, 29, 57, and 58, Block 7, Metairie Terrace Subdivision, Parish of Jefferson, State of Louisiana.
For the reasons assigned, the judgments of the Court of Appeal, Fourth Circuit, are affirmed.
FOURNET, C. J., concurs in the decree.
McCALEB, J., concurs with written reasons.
HAMITER and SUMMERS, JJ., dissent with written reasons.

. 135 So.2d 580; 135 So.2d 583.

. It is to be noted that tbe State of Louisiana acquired the property in the name of Mrs. Ethel Funk, and that the Louisiana Highway Oommission acquired the property from Thrift Homestead Association. The acts of sale, therefore, recited different vendors. The Highway Oommission was unaware of the adjudication to the State.

. LSA-R.S. 47:2189 provides that any person who desires to purchase unredeemed property bid in for and adjudicated to the State for unpaid taxes shall apply to the Register of the State Land Office and deposit with that office a certain sum as evidence of good faith in the application; the Register of the State Land Office shall cause the sale to be advertised and after a certain period the property so advertised shall be sold by the sheriff of the parish wherein it is located.

. “The Legislature shall provide for the establishment and maintenance of a system of hard surface State highways and bridges, under the supervision of the Board of State Engineers, * * * shall authorize the acquisition, by expropriation or otherwise, of rights of way for highways, and drains therefor; may provide for the purchase or expropriation of property necessary or useful for the purpose of building and maintaining highways, * *

.In Saint v. Allen, 172 La. 350, 134 So. 246, this Court stated: “The Commission, in our opinion, is a distinct legal entity from the state. Section 3 of Act No. 95 of 1921 (Ex.Sess.) makes it a body corporate, with power as such to sue and be sued. It is an agency of the state, and not the state itself, created for the purpose of executing certain duties, devolving primarily upon the state. * * * ” (Emphasis ours.)

.Act 80 of 1888, as amended, had for its purpose the sale of lands adjudicated to the State for non-payment of taxes. In Howcott v. Simeon, 1 Or.Ct. of App. 54, it was stated that, “the evident purpose of the amendment of 1896 was to enable the State to dispose more easily of property practically hors de commerce and yielding no tax, by cheapening the selling fixed by the Act of 1888.”

.Klause’s testimony quoted supra.