# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of January, 2016**, are as follows:

**BY WEIMER, J.**:

2015-CA-1750    DERRICK SHEPHERD v. THOMAS SCHEDLER, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF LOUISIANA, & JAMES "BUDDY" CALDWELL IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF LOUISIANA, & PAUL D. CONNICK, JR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 24TH JUDICIAL DISTRICT, PARISH OF JEFFERSON, STATE OF LOUISIANA (Parish of E. Baton Rouge)

For the reasons assigned, therefore, we find that 1997 La. Acts 1492, which attempted to amend La. Const. art. I, § 10, is null and void because it was not constitutionally adopted, and we affirm the decision below.
AFFIRMED.

GUIDRY, J., dissents and assigns reasons.
CRICHTON, J., concurs and assigns additional reasons.

01/27/2016

# SUPREME COURT OF LOUISIANA

## NO. 2015-CA-1750

## DERRICK SHEPHERD

### VERSUS

## THOMAS SCHEDLER, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF LOUISIANA, & JAMES "BUDDY" CALDWELL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF LOUISIANA, & PAUL D. CONNICK, JR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 24ᵀᴴ JUDICIAL DISTRICT, PARISH OF JEFFERSON, STATE OF LOUISIANA

*ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE*

**WEIMER**, Justice

This matter arises from a challenge to the validity of a 1998 amendment to La. Const. art. I, § 10 limiting felons from seeking public office. The case is before us on direct appeal from a district court judgment declaring La. Const. art. I, § 10(B) null and void for failure to comply with the requirements of La. Const. art. XIII, § 1, which, in part, mandates the assent of two-thirds of the legislature and a majority of the popular vote to amend the Louisiana Constitution. The judgment was based on a stipulation that the language presented to the voters for approval and ratification as a constitutional amendment was not the language adopted by the legislature. Simply stated, what the citizens voted on was not what the legislature enacted.

After reviewing the record, the legislative instruments, and the constitutional provision at issue, we agree with the district court that the constitutionally mandated

requirements for amending the constitution were not followed in this case. In reaching this conclusion, we are mindful that ours is a system of law, not men, and our fidelity must be to the mandatory requirements of the constitution without regard to the parties, or to the wisdom and policy of the amendment at issue. The issue before us relates solely to whether the constitutionally mandated restraints and procedures for amending our state's most fundamental law were followed. To ignore these restraints and procedures would be to open the constitution to alteration without the protections enshrined in the constitution. This we cannot do. We are thus duty-bound by the constitution to affirm the district court's judgment holding the amendment was not properly enacted.

## FACTS AND PROCEDURAL HISTORY

Prior to 1998, the Louisiana Constitution did not contain a provision disqualifying a convicted felon from seeking a municipal or state office. In 1997, Senator Max Malone introduced Senate Bill No. 321 during the regular legislative session. Essentially, Senator Malone's original bill sought to add a paragraph to La. Const. art. I, § 10 which prohibits convicted felons who have exhausted all legal remedies and who have not been pardoned from qualifying as a candidate for or taking public elective office. As later amended in the Senate, the bill provides an exception for felons who have served their sentences if the date of qualifying for the elective office is more than fifteen years after the date of completion of the original sentence. The relevant sections of Senate Bill No. 321 provide:

> (B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elected public office or take elected office or appointment of honor, trust, or profit in this state:
>     (1) Those persons who have been convicted within this state of a felony and who have exhausted all legal remedies, or who have been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime and who have exhausted all legal remedies which, if committed in this state, would be a felony,

2

and have not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.

(2) Those actually under an order of imprisonment for conviction of a felony.

(3) A person who desires to seek or hold an elective office who has committed a felony and has served his sentence shall be permitted to seek or hold such office within fifteen years from the date of the completion of the original sentence to the date of qualifying for candidacy.

Senate Bill No. 321 passed the Senate by more than a two-thirds vote (29 yeas, 3 nays), and the engrossed bill was ordered to the House of Representatives on May 27, 1997.

Once in the House, the bill underwent several amendments. Notably, in Committee, numbered paragraph (3) was deleted and replaced with the following:

(C) Exception. Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than fifteen years after the date of the completion of his original sentence.

When the bill came up for final vote, Representative Kyle Green proposed further amendments to Paragraph C from the House Floor:

(C). Exception**s. (1)** Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony **for which the person was incarcerated** and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than fifteen years after the date of the completion of his original sentence.

**(2) Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony for which the person was not incarcerated but who received probation for such felony shall be permitted to qualify as a candidate for or hold such office after successful completion of the probation period.**
[Amending language bolded and underscored.]

3

The floor amendments were adopted and the bill, with the Green amendments, passed by more than a two-thirds vote of the elected members of the House (71 yeas, 31 nays). The bill was ordered returned to the Senate. Once there, the House amendments to Senate Bill No. 321 were read and concurred in by a vote of 32 yeas, 4 nays. However, for reasons which remain unexplained, the enrolled version of Senate Bill No. 321, which became 1997 La. Acts 1492, did not include the Green amendments. Instead, Act 1492 reads in its entirety:

A JOINT RESOLUTION

Proposing to amend Article I, Section 10 of the Constitution of Louisiana, relative to the right to vote; to prohibit convicted felons from seeking or holding public office within a certain time period; and to specify an election for submission of the proposition to electors and provide a ballot proposition.

Section 1. Be it resolved by the Legislature of Louisiana, two-thirds of the members elected to each house concurring, that there shall be submitted to the electors of the state, for their approval or rejection in the manner provided by law, a proposal to amend Article I, Section 10 of the Constitution of Louisiana, to read as follows:

§ 10. Right to Vote; Disqualification from seeking or holding an elective office

Section 10. (A) Right to Vote. Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended while a person is interdicted and judicially declared mentally incompetent or is under an order of imprisonment for conviction of a felony.

(B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:

(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.

4

(2) A person actually under an order of imprisonment for conviction of a felony.

(C) Exception. Notwithstanding the provisions of Paragraph (B) of this Section, a person who desires to qualify as a candidate for or hold an elective office, who has been convicted of a felony and who has served his sentence, but has not been pardoned for such felony, shall be permitted to qualify as a candidate for or hold such office if the date of his qualifying for such office is more than fifteen years after the date of the completion of his original sentence.

Section 2. Be it further resolved that this proposed amendment shall be submitted to the electors of the state at the congressional primary election to be held in 1998.

Section 3. Be it further resolved that on the official ballot to be used at the election there shall be printed a proposition, upon which the electors of the state shall be permitted to vote FOR or AGAINST, to amend the Constitution of Louisiana, which proposition shall read as follows:

> To prohibit convicted felons from seeking or holding public office within fifteen years of completion of sentence and to provide for expressed restoration of that right by pardon. (Amends Article I, Section 10)

It is this version of Senate Bill No. 321 that was presented to the voters as Act 1492 at the election on October 3, 1998; and it is this version that was approved by a majority vote of the electorate and which currently appears in the constitution. Essentially, the Green amendments, despite being included in the enactment by the legislature, were not included in the version submitted to the voters for approval. It is against this legislative backdrop that the present litigation arises.

On September 17, 2015, Derrick Shepherd filed a Petition for Declaratory Judgment and for Injunctive Relief in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. The petition names as defendants Thomas Schedler in his capacity as Secretary of State for the State of Louisiana, James "Buddy" Caldwell in his capacity as Attorney General for the State of Louisiana, and Paul D. Connick, Jr. in his capacity as District Attorney for the Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana. The petition alleges that on September 10, 2015, Mr.

5

Shepherd filed a notice of candidacy qualifying form with the Jefferson Parish Clerk of Court's office in which he certified that he would be a candidate for the office of State Representative for District 87 of the Louisiana House of Representatives in the primary election to be held on October 24, 2015. The petition further alleges that on September 14, 2015, Mr. Connick, in his official capacity as District Attorney for the Twenty-Fourth Judicial District, filed a petition in the Twenty-Fourth Judicial District objecting to the candidacy of Mr. Shepherd because Mr. Shepherd pled guilty to a felony in a United States District Court on October 10, 2008, and it has been less than fifteen years since he completed his sentence,[1] circumstances which disqualify Mr. Shepherd from seeking office pursuant to La. Const. art. I, § 10(B). Based on the aforementioned legislative history of Senate Bill No. 321 of 1997, Mr. Shepherd's petition seeks a declaration that the 1997 amendment to La. Const. art. I, § 10, specifically paragraph (B) thereof, is null and void because it was passed in violation of the legislative process for amending the Constitution set forth in "Section I, Article 21 of the Louisiana Constitution as interpreted by the Louisiana Supreme Court in **Graham v. Jones**, 198 La. 507, 3 So.2d 761 [(1941)]."[2] In addition to declaratory relief, the petition seeks an injunction enjoining Mr. Connick from prosecuting the Jefferson Parish suit objecting to Mr. Shepherd's candidacy pending resolution of the constitutional challenge.

---

[1] Mr. Shepherd's petition concedes the veracity of these predicate facts.

[2] The reference to Section I, Article XXI is obviously in error, as there is no Article XXI in the 1974 Constitution. However, as demonstrated by the citation to **Graham v. Jones**, *supra*, it appears that the constitutional article Mr. Shepherd was referencing was actually Article XXI, Section 1 of the Constitution of 1921, the predecessor of Article XIII, § 1 of the 1974 Constitution. While unfortunate, the inadvertent citation to the earlier version of the relevant constitutional provision does not, under the circumstances of this case, affect the sufficiency of the pleading, as the petition, taken as a whole, sufficiently particularizes the grounds for the plea of unconstitutionality. See, **Vallo v. Gayle Oil Company, Inc.**, 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 864-865 ("[A] statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.").

Mr. Shepherd's request for a temporary restraining order directed to Mr. Connick was denied by the East Baton Rouge District Court on September 17, 2015.[3] The request for declaratory relief proceeded to a hearing on September 22, 2015. At the conclusion of that evidentiary hearing, the district court rendered judgment in Mr. Shepherd's favor, declaring Article I, § 10(B) of the Constitution null and void for failure to comply with the requirements of Article XIII, § 1 of the Constitution[4] for promulgation of amendments to the Constitution. In oral reasons, the district court explained:

> The Legislature in '97 adopted a joint resolution. There was some amendments [sic] in the House. That amendment went to the Senate. The Senate concurred in that resolution – I mean in that amendment. And then somewhere in the process of getting to the Secretary of State's office, part of the amendment was not printed and put on the ballot to the voters. So the court has to determine whether or not the constitution, as it stands, shall remain or whether or not it shall be declared null and void or unconstitutional. And so I go back to the constitution itself, Louisiana Constitution Article 13, Section 1, which deals with how we can amend the constitution. And pertinent parts of Section 1, in (A)(1) states the procedure in [sic] how to amend the constitution. And it says, ... an amendment to this constitution may be proposed by joint resolution at any regular session of the Legislature. And it goes on to say, if two-thirds of the elected members of each House concur in the resolution pursuant to all procedures and formalities required for passage of a bill except submission to the governor, the Secretary of State shall have the proposed amendment published once in the official journal of each parish within not less than thirty days, no[r] more than sixty days preceding the election in which the proposed amendment is to be submitted to the electors. The question this court has to decide is whether or not the proposed amendment that was passed by the

---

[3] With no injunction in place, Mr. Connick's petition objecting to the candidacy of Mr. Shepherd proceeded to trial in the Twenty-Fourth Judicial District Court on September 18, 2015. Following an evidentiary hearing, the district court granted Mr. Connick's petition, ruling that Mr. Shepherd is prohibited from qualifying for the office of state representative for District 87 of the Louisiana House of Representatives pursuant to Article I, § 10 of the Constitution. The district court ordered the clerk of court to remove Mr. Shepherd's name from the ballot, but stayed that order pending a timely appeal by Mr. Shepherd. On appeal, the court of appeal affirmed the ruling of the district court in its entirety. **Connick v. Shepherd**, 15-582 (La.App. 5 Cir. 9/24/15), 176 So.3d 1129. This court denied writs. **Connick v. Shepherd**, 15-1763 (La. 9/30/15), ___ So.3d ___. The district court judgment disqualifying Mr. Shepherd as a candidate became final and definitive five days, exclusive of legal holidays, thereafter. See La. C.C.P. art. 2166(E).

[4] Quoted at pp. 17-18, *infra*.

Legislature is the amendment that was – that the voters actually voted on. All parties agreed that the electors did not vote on the amendment in the form or with the language that was passed by the Legislature. And looking at how you amend the constitution is, at least in this court's mind, is very clear that you must have a joint resolution by the legislature. And if they pass that joint resolution, then that proposed amendment, meaning all parts of it, must go to the Secretary of State for the voters to vote on it. And the voters did not vote on the entirety of the proposed amendment by the Legislature. The Legislature expressed its legislative intent by passing it by a two-thirds vote of each body. So therefore, this court finds that, as it stands now, Section – Article I, Section 10 of the Louisiana Constitution is unconstitutional due to the fact that the voters did not vote on what was passed by the Louisiana Legislature in 1997.

Defendant, Mr. Connick, suspensively appealed the district court judgment to this court,[5] which has jurisdiction over the appeal pursuant to Article V, § 5(D)(1) of the Louisiana Constitution.[6]

## LAW AND ANALYSIS

Before we address the validity of La. Const. art. I, § 10 as amended by 1997 La. Acts 1492, this court must resolve two threshold issues: (1) whether the plaintiff, Derrick Shepherd, has standing to bring the constitutional challenge; and (2) whether the case presents a justiciable controversy or whether it has been rendered moot because the election for which plaintiff sought to qualify as a candidate has occurred, and votes for plaintiff were not counted on the ballot. We address each of these issues in turn.

### I. *Standing*

---

[5] Because none of the other defendants, namely the Secretary of State, Mr. Schedler, nor the Attorney General, Mr. Caldwell, appealed the district court judgment, we will not address the assignments of error separately raised by these parties, as it is well-settled that a party who has not appealed or answered the appeal may not seek to have the district court's judgment modified in his or her favor. See, La. C.C.P. arts. 2082, 2083, and 2133; see also **Walker v. Clarendon Nat. Ins. Co.**, 01-2338, p. 2 (La. 12/14/01), 802 So.2d 1285, 1286.

[6] La. Const. art. V, § 5(D)(1) provides this court with appellate jurisdiction when "a law or ordinance has been declared unconstitutional."

8

One of the predicate issues that must be decided by a court before considering a constitutional challenge is whether the party seeking the declaration of unconstitutionality has standing to bring the challenge. **In re Melancon**, 05-1702, p. 7-8 (La. 7/10/06), 935 So.2d 661, 667; **State v. Mercadel**, 03-3015, p. 7-8 (La. 5/25/04), 874 So.2d 829, 834. To have standing to bring a constitutional challenge, the party bringing that challenge must have rights in controversy. **Mercadel**, 03-315 at 8, 874 So.2d at 834. This is particularly true in the context of a declaratory judgment action, in which "[*s]tanding* is a concept utilized to determine if a party is sufficiently affected so as to ensure that a *justiciable controversy* is presented to the court." **Melancon**, 05-1702 at 9, 935 So.2d at 668, (*quoting* **Guidry v. Dufrene**, 96-0194, p. 4 (La.App. 1 Cir. 11/8/96), 687 So.2d 1044, 1046).

This court has explained that a party has standing to argue that a law or, as in this case, a proposed constitutional provision, violates the constitution only where the law "seriously affects" the party's own rights. **Melancon**, 05-1702 at 8, 935 So.2d at 667; **Greater New Orleans Expressway Comm'n v. Olivier**, 04-2147, p. 4 (La. 1/19/05), 892 So.2d 570, 573; **Mercadel**, 03-315 at 8, 874 So.2d at 834. More specifically, "[t]o have standing, a party must complain of a constitutional defect in the application of the law to [the party], not of a defect in its application to third parties in hypothetical situations." **City of Baton Rouge/Parish of East Baton Rouge v. Myers**, 13-2011, p. 10 (La. 5/7/14), 145 So.3d 320, 330-331; **Melancon**, 05-1702 at 8, 935 So.2d at 667. If it can be said that the party bringing the challenge has an interest at stake in the litigation which can be legally protected, then the predicate requirement of standing is satisfied. **Melancon**, 05-1702 at 9, 935 So.2d at 668.

9

In the district court, plaintiff's allegations of standing are derived from his petition. Through the allegations thereof, which are not contested,[7] plaintiff claims standing to challenge the validity of the 1998 amendment of Const. art. I, § 10 based on his status as a convicted felon whose candidacy for elective office has been challenged pursuant to the amendment. Plaintiff's petition avers, in pertinent part:

IV.

On September 10, 2015 your petitioner, Derrick Shepherd, filed a notice of candidacy "qualifying form" with the Jefferson Parish Clerk of Courts [sic] Office in which he certified that he will be a candidate in the primary election to be held on October 24th, 2015. The office for which your petitioner qualified as a candidate is the office of State Representative for District 87 of the Louisiana House of Representatives.

V.

On September, 14, 2015 the defendant, Paul D. Connick, Jr. in his official capacity as District Attorney for the 24th Judicial District for the Parish of Jefferson, State of Louisiana, filed a petition objecting to the candidacy of Derrick Shepherd. Said petition bears Docket Number 753-481, said petition is assigned to Division N, the Honorable Stephen D. Enright, Jr.

VI.

Petitioner alleges that the basis for the disqualification is that he plead [sic] guilty to a felony in the United States District Court on October 10, 2008. The petitioner admits that it has been less than 15 years since the completion of his sentence.

. . . .

XIX.

Petitioner alleges that he will suffer irreparable harm if he is stricken from the ballot by the actions of Paul D. Connick, Jr. in his official capacity as District Attorney for the 24th Judicial District for the Parish of Jefferson, State of Louisiana, which actions are violative of Louisiana law over the legal infirmities in La. Constitution, Article I, §10.

---

[7] Mr. Connick admitted the veracity of the allegations of paragraphs IV, V, and VI, quoted below, in his answer to the petition.

Louisiana Const. art. I, § 20 provides that "[f]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." This court has recognized that the "full rights of citizenship" referenced in Const. art. I, § 20 include the right to run for public office. **Touchet v. Broussard**, 10-0380, p. 9 (La. 3/3/10), 31 So.3d 986, 992. Indeed, this court has recognized the right to hold public office as one of the basic rights of citizenship. **Malone v. Shyne**, 06-2190, p. 18 (La. 9/13/06), 937 So.2d 343, 356 (*citing* **State v. Adams**, 355 So.2d 917, 922 (La. 1978)). Pursuant to La. Const. art. I, § 20, therefore, plaintiff's right to participate in the political process through candidacy and vote is a legally protectable interest. As the petition sets forth, that interest is seriously affected by application of La. Const. art. I, § 10 as amended, as application of the amendment subjects plaintiff to disqualification for elective office. Clearly, the allegations of plaintiff's petition demonstrate that he is a person whose legal rights are affected by the challenged constitutional provision and, thus, that he has standing to bring the instant action.

Defendant argues, nevertheless, that standing is lacking because plaintiff would not have benefitted from the language that was inadvertently omitted from the enrolled bill (the Green amendment)[8] and, thus, he has suffered no harm by the failure to present the full and correct version of the enrolled bill to the electorate for passage. The fallacy in this argument is two-fold. First, it is based on an assumption that the amendment with the full text approved by the legislature (including the Green amendment) would have passed, an exercise requiring speculation. Standing is determined by the law in effect, not by what may or may not have been enacted, as it

---

[8] This amendment added an additional exception to the bar against convicted felons seeking elective office for persons convicted of a felony who were not incarcerated but who instead received probation and who successfully completed the probationary period.

is the law in effect that "seriously affects" and operates on the plaintiff's rights.[9] Second, while the general rule is that only a person whose rights are injuriously affected by those provisions of law sought to be declared unconstitutional can be heard to challenge the constitutionality thereof, the rule is not without exception. See, e.g., **State ex rel. Kemp v. City of Baton Rouge**, 40 So.2d 477, 483 (La. 1949). A litigant has the right to challenge the constitutionality of provisions of a law which do not affect him or her, if other provisions thereof affecting the litigant must fall if the challenged provisions are held unconstitutional. *Id.* at 483. Because plaintiff maintains that the entirety of the amendment to La. Const. art. I, § 10 must fall as a result of the omission of the Green amendment from the enrolled bill, this case lies squarely within the exception.

Moreover, we have recognized that "standing is gauged by the specific statutory or constitutional claims that the party presents and his or her relationship to such claims." **Melancon**, 05-1702 at 9, 935 So.2d at 668. In this case, the claim that is asserted is the claim that the mandatory provisions of the constitution directing the manner in which the constitution may be amended were not followed. When such a claim is asserted, this court has recognized a broad standing conferred on citizens and taxpayers: "If other officials of the State government intentionally or unintentionally fail to comply with the mandatory provision of the constitution – which clearly and explicitly set forth the manner in which that fundamental law shall be amended – it is the absolute right of any citizen and taxpayer to challenge the constitutionality of a

---

[9] This is underscored by the fact that if the 1998 amendment to La. Const. art. I, § 10 is declared invalid, the applicable law becomes that in effect prior to the invalid amendment. **Louisiana Republican Party v. Foster**, 96-0314, pp. 13-14 (La. 5/21/96), 674 So.2d 225, 234; **Concerned Bus. & Prop. Owners of DeSoto, Inc. v. DeSoto Parish School Bd.**, 531 So.2d 436, 443 (La. 1988). Because the constitution did not contain a provision disqualifying a convicted felon from seeking elective office prior to the 1998 amendment, a declaration of nullity would remove the existing impediment to plaintiff's candidacy for an elected office.

12

proposed amendment ...." **Graham v. Jones**, 3 So.2d 761, 795 (La. 1941). As a "person of the full age of majority and resident of the Parish of Jefferson" who has filed a notice of candidacy for elective office and who will suffer injury in the form of disqualification unless the amendment is declared unconstitutional,[10] plaintiff satisfies this basic standing requirement.

## II. *Mootness*

The second predicate issue that must be addressed before we consider the validity of La. Const. art. I, § 10 as amended by Act 1492 is whether the challenge has become moot because the election for which plaintiff sought to qualify as a candidate has occurred, and votes for plaintiff were not counted on the ballot. It is well-settled in the jurisprudence of this state that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such controversies. **Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance**, 98-0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193. As a general rule:

> [A]n issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." **Perschall v. State**, 96-0322 (La. 7/1/97), 697 So.2d 240; **Louisiana Associated Gen. Contractors, Inc. [v. State]**, 669 So.2d at 1193; **American Waste & Pollution Control Co. [v. St. Martin Parish Police Jury]**, 627 So.2d at 162. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. **Robin [v. Concerned Citizens for Better Educ. in St. Bernard, Inc.]**, 384 So.2d at 405. If the case is moot, then "'there is no subject matter on which the judgment of the court can operate.'" **St. Charles Parish Sch. Bd. [v. GAF Corp.]**, 512 So.2d at 1171 (*citing* **Ex parte Baez**, 177 U.S. 378, 20 S.Ct. 673, 44 L.Ed. 813 (1900)). That is, jurisdiction, once established, may abate if the case is moot.

**Cat's Meow, Inc.**, 98-0601 at 8, 720 So.2d at 1193.

---

[10] The veracity of quoted provisions from plaintiff's petition have been admitted in Mr. Connick's answer.

When, as in the instant case, the relief sought by the plaintiff entails a request that his name remain on an election ballot and that votes for him be counted, and the election is held before the case can be finally decided, mootness may well result since no effective relief can be provided to the plaintiff/candidate for whom votes were not counted after the judgment of disqualification and election results are final. Nevertheless, an intervening election will not moot the controversy if an exception to the mootness doctrine applies. See, e.g., **Cat's Meow, Inc.**, 98-0601 at 9, 720 So.2d at 1194.

One of the well-established exceptions to the mootness doctrine was discussed in depth by this court in **State v. Rochon**, 11-0009 (La. 10/25/11), 75 So.3d 876. Therein, the court noted that "[e]ven when seemingly no continuing controversy exists, federal courts apply an exception for challenged practices that are 'capable of repetition, yet evading review.'" **Rochon**, 11-0009 at 10, 75 So.3d at 884 (*quoting* **Spencer v. Kemna**, 523 U.S. 1, 17 (1998)). The court explained: "Under this exception, a court may consider the merits of a case that would otherwise be deemed moot when the challenged action was in its duration too short to be fully appealed prior to its cessation or expiration and a reasonable expectation existed that the same complaining party would be subjected to a similar action." *Id.*, 11-0009 at 11, 75 So.3d at 884. In **Rochon**, the court pointed to the landmark abortion case of **Roe v. Wade**, 410 U.S. 113 (1973), as the "classic example" of this exception, while noting that cases challenging election laws typically fall under the exception. *Id.* ("[C]ases challenging election laws often fall within the 'capable of repetition, yet evading review' exception because 'the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits.'") (*quoting* **Porter v. Jones**, 319 F.3d 483, 490-91 (9th Cir. 2003)).

14

As explained above, under the federal jurisprudence, there are generally two criteria for the "capable of repetition, yet evading review" exception: "(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." **Weinstein v. Bradford**, 423 U.S. 147, 149 (1975).

In the instant case, we have no difficulty in concluding that the first prong of the capable of repetition exception is satisfied by the short time frame between plaintiff's declaration of candidacy on September 10, 2015, and the election of October 24, 2015, in which his candidacy was rejected. As recognized in **Morial v. Judiciary Commission of State of Louisiana**, 565 F.2d 295, 297 n.3: "The pace of reasoned constitutional adjudication ... is not parametric with that of election campaigns."

The second prong of the exception – that there be a reasonable expectation that the same complaining party would be subjected to the same action again – would ostensibly require an allegation, not present in this case, that plaintiff intends to run for office in the next election. However, in **Rochon**, this court, finding state courts unconstrained by Article III of the federal constitution, determined that the jurisprudence of Louisiana and of many states supports an exception to the mootness bar "when a claim is capable of repetition *generally without regard to the same complainant*, evading review, and of public importance." **Rochon**, 11-0009 at 14, 16, 75 So.3d at 886, 887 (emphasis added). Such an exception is not inconsistent with federal jurisprudence, which commonly dispenses with the same-complainant requirement in election cases, "focusing instead upon the great likelihood that the issue will recur *between the defendant and the other members of the public at large*."

**Honig v. Doe**, 484 U.S.305, 335-336 (1988) (Scalia, J., dissenting). Thus, for example, in **Storer v. Brown**, 415 U.S. 724 (1974), the Supreme Court reasoned:

> The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections. This is, therefore, a case where the controversy is "capable of repetition yet evading review."

**Storer**, 415 U.S. at 737 n.8.

Similarly, the effects of La. Const. art. I, § 10 on independent candidacies will certainly persist as the provision is applied in future elections. Accordingly, we find that the present matter is one capable of repetition, yet evading review, and that the present appeal thus presents a justiciable question for the court to resolve.

### III. *Validity of La. Const. art. I, § 10 as amended by 1997 La. Acts 1492*

For purposes of the present challenge, the parties stipulated that the bill the legislature passed as a Joint Resolution, Senate Bill No. 321, was not what was presented to the voters for ratification and adoption as an amendment to the constitution, as the Green amendment was omitted from the enrolled bill which became 1997 La. Acts 1492. Given this stipulation, the issue presented for this court's resolution is whether, in light of this discrepancy, the amendment conforms with La. Const. art. XIII, § 1, which delineates the procedural requirements for amending the constitution.

Whether an amendment to the constitution was submitted to the electorate in accord with the prescribed constitutional restraints is a question of law, subject to *de novo* review. **Forum for Equality PAC v. McKeithen**, 04-2477, pp. 10-11 (La. 1/19/05), 893 So.2d 715, 723. In conducting this review, we are guided by principles that, while articulated long ago, remain relevant today: "[T]he court must necessarily

have in mind the universal rule that, whenever a constitutional amendment is attacked

as not constitutionally adopted, the question presented is, not whether it is possible to

condemn, but whether it is possible to uphold; that every reasonable presumption,

both of law and fact, is to be indulged in favor of the legality of the amendment, which

will not be overthrown, unless illegality appears beyond a reasonable doubt." **Board

of Liquidation of State Debt of Louisiana v. Whitney-Central Trust & Savings

Bank**, 122 So. 850, 851 (La. 1929). In addition, we are mindful of the following:

> "Provisions of a constitution regulating its own amendment, ... are not merely directory but are mandatory; and a strict observance of every substantial requirement is essential to the validity of the proposed amendment." **Graham [v. Jones]**, 3 So.2d at 782, *quoting* CONSTITUTIONAL LAW 16 C.J.S., § 7. This general rule governs the restraints which the people have placed in their Constitution upon themselves, their officers, and agents and representatives. *Id.* Thus, in submitting an amendment to the people, the Legislature is bound by the provisions of our constitution mandating the procedural process for amending the constitution.

**Forum for Equality PAC**, 04-2477 at 11, 893 So.2d at 723.

Article XIII, § 1 of the 1974 Constitution sets forth the procedure for proposing

and adopting constitutional amendments. It provides, in relevant part:

> Section 1. (A)(1) Procedure. An amendment to this constitution may be proposed by joint resolution at any regular session of the legislature, but the resolution shall be prefiled, at least ten days before the beginning of the session or as provided in Subparagraph (2) of this Paragraph, in accordance with the rules of the house in which introduced. An amendment to this constitution may be proposed at any extraordinary session the legislature if it is within the objects of the call of the session and is introduced in the first five calendar days thereof. If two-thirds of the elected members of each house concur in the resolution, pursuant to all of the procedures and formalities required for passage of a bill except submission to the governor, the secretary of state shall have the proposed amendment published once in the official journal of each parish within not less than thirty nor more than sixty days preceding the election at which the proposed amendment is to be submitted to the electors. Each joint resolution shall specify the statewide election at which the proposed amendment shall be submitted. Special elections for submitting proposed amendments may be authorized by law.

. . . .

       (B) Form of proposal. A proposed amendment shall have a title containing a brief summary of the changes proposed; shall be confined to one object; and shall set forth the entire article, or the sections or other subdivisions thereof, as proposed to be revised or only the article, sections, or other subdivisions proposed to be added. However, the legislature may propose, as one amendment, a revision of an entire article of this constitution which may contain multiple objects or changes. A section or other subdivision may be repealed by reference. When more than one amendment is submitted at the same election, each shall be submitted so as to enable the electors to vote on them separately.

       (C). Ratification. If a majority of the electors voting on the proposed amendment approve it, the governor shall proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation, unless the amendment provides otherwise. ... .

Pursuant to this provision "five elements are indispensable to give validity to a proposed constitutional amendment." **Graham**, 3 So.2d at 782.[11] These elements are: "The assent of two-thirds of the Legislature, the submission of only one amendment in each proposal, the designation by the Legislature of the date of the election at which the submission shall take place, the publication of the proposed amendment, and a majority of the popular vote." *Id.* In the present case, compliance with one of those indispensable elements is called into question: the assent of two-thirds of the legislature.

In declaring the 1998 amendment to La. Const. art. I, § 10 unconstitutional, the district court examined this essential element of the amendment procedure in the context of the stipulated facts; *i.e.*, that the electors did not vote on the proposed amendment to La. Const. art. I, § 10 in the form or with the full language that was passed by the legislature because a lawfully adopted amendment (the Green

---

[11] While the court in **Graham** was construing the provisions of Section 1 of Article XXI of the 1921 Constitution, the predecessor to Article XIII, §1 of the 1974 Constitution, the relevant substance of both constitutional provisions is essentially the same.

amendment) to the joint resolution was erroneously dropped from that resolution in the process of enrolling the bill. Drawing on the provisions of La. Const. art. XIII, § 1, the district court reasoned as follows. The constitution requires amendments thereto to be proposed by joint resolution at any regular session of the legislature. The resolution must be concurred in by two-thirds of the elected members of each House according to all the procedures and formalities required for passage of a bill except for submission to the governor, and published in the official journal of each parish by the Secretary of State. The resolution that is concurred in by the members of each House evidences the intent of the legislature as to the proposed amendment. If the proposed amendment is presented to the voters in a form that is not coextensive with what the legislature intended, then the assent of two-thirds of the Legislature is lacking. In other words, to pass muster under La. Const. art. XIII, § 1, what the legislature passes and what is submitted to the voters for approval must be the same. Because, in this case, "the voters did not vote on what was passed by the Louisiana Legislature in 1997," the district court declared the 1998 amendment to Const. art. I, § 10 unconstitutional. We can find no fault with the district court's analysis in this regard.

Before this court, defendant argues that a defect in the enactment process is not necessarily fatal to a constitutional amendment. Averring that the failure to include the Green amendment in the enrolled bill for approval by the voters was a "clerical error," defendant cites **Lucas v. Berkett**, 98 So.2d 229 (La. 1957), for the proposition that "substantial compliance" with the procedural requirements of La. Const. art. XIII, § 1 is sufficient. Defendant asserts that substantial compliance was achieved in this instance because the legislature did concur in that portion of the proposed amendment that was actually submitted to the voters and approved by a majority vote.

In **Lucas**, the validity of a constitutional amendment was attacked on grounds that the proposed amendment was not concurred in by both houses of the legislature. **Lucas**, 98 So.2d at 231. The legislative enactment at issue in **Lucas** originated with a bill in the House. The original House bill underwent numerous amendments in the House before final adoption and presentation to the Senate. These amendments were noted on the reengrossed House bill by striking out the portions of the bill that were changed and typing on the margins the amendments added. The reengrossed bill as amended by the House was received in the Senate and read on three separate days before being passed by a two-thirds vote and returned to the House without amendment for enrollment and presentation to the voters. *Id.* However, the Senate journal entries identified the House bill by title only, and the title entered was that of the original House bill and not of the bill as amended. *Id.*, 98 So.2d at 231-32. Further, it was the original House bill, without amendment, that was entered in full on the Senate journal, and not the amended bill that was adopted by the House. *Id.*, 98 So.2d at 232. The plaintiff argued that these journal entries proved that it was only the original bill without the amendments that was considered by the Senate, and not the amended bill as adopted by the House; thus, the constitutional mandate requiring the concurrence of two-thirds of the elected membership of both houses on the same bill was not complied with. *Id.*

In addressing the plaintiff's arguments, the court conceded that "if the Senate never passed House Bill No. 1471 as amended by the House, there would be merit to [plaintiff's] argument, for a proposed constitutional amendment must be concurred in by two-thirds of the members elected to each house." *Id.* However, the court found that, despite the incomplete journal entries, "the photostatic copy of reengrossed House Bill No. 1471, with the 31 House amendments interlined thereon and the

history of its progress through the House and Senate officially endorsed thereon, shows beyond question that the Senate received House Bill No. 1471 as amended and passed this bill as amended by a vote of two-thirds of the members elected to that body." *Id.* Thus, the question that was presented for the court to resolve was not whether the House passed one bill and the Senate passed an entirely different bill, thus, violating the requirement that a proposed constitutional amendment be concurred in by two-thirds of the members elected to each house, but whether there was compliance with the "provision of Section 1 of Article 21 of the [1921] Constitution requiring that a proposed amendment to the Constitution be 'entered on the journal.'" *Id.* In resolving that question, the court relied on jurisprudence holding that the requirement that a proposed constitutional amendment be "entered on the journal" does not mean that the proposed amendment must be published in full in the journal, and a substantial compliance with this requirement is sufficient. *Id.* (*citing* **East Jefferson Waterworks District No. 1 v. Caldwell & Co..**, 127 So.739 (La. 1930)). In reaching the conclusion that substantial compliance with the journal entry requirement had been achieved, the court quoted liberally from an opinion of the Kansas Supreme Court:

> The two important, vital elements in any constitutional amendment are the assent of two-thirds of the Legislature and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because by them certainty as to the essentials is secured. But they are not themselves essentials. Take a strong illustration: The Constitution requires that the 'Secretary of State shall cause the same to be published in at least one newspaper in each county of the state where a newspaper is published, for three months preceding,' etc. Suppose a unanimous vote of both houses of the Legislature and a unanimous vote of the people in favor of a constitutional amendment, but that the secretary had omitted to publish in one county in which a newspaper is published, would it not be simply an insult to common sense to hold that thereby the will of the Legislature and people had been defeated? Is it within the power of the secretary either through ignorance or design to thwart the popular decision? Is he

21

given a veto, or can he create one?  This may be an extreme case, but it only illustrates the principle. The records of the proceedings of the two houses are made, not by the houses themselves, but by clerical officers. True, they are under the control of the respective houses, but in fact the records are made by clerks.  May they defeat the legislative will?  The Constitution does not make amendments dependent upon their approval or their action.  To insure certainty and guard against mistake, journal evidence of the amendment and votes is prescribed; but this is mere matter of evidence, and not the substantial condition of constitutional change. ....

**Lucas**, 98 So.2d at 232-233 (*quoting* **Saunders v. Board of Liquidation of City Debt**, 34 So. 457, 464 (La. 1903), and **Constitutional Prohibitory Amendment Cases**, 24 Kan. 700 (1881).

Defendant seizes on the foregoing language to argue that the omission of the Green amendment from the enrolled version of Senate Bill. No. 321 was simply a clerical error and a "technical" defect in the amendment process which does not affect the validity of the amendment as approved by the voters.  However, "the mandatory provisions in the Constitution were considered by their authors to be basic and not technical."  **Graham**, 3 So.2d at 796.  Moreover, to characterize what occurred as a mere "clerical error" is a serious mischaracterization, as that error strikes at the core of the constitutional requirements.  As noted in **Lucas**, (the case cited by defendant), "[t]he two important, vital elements in any constitutional amendment are the assent of two-thirds of the Legislature and a majority of the popular vote."  **Lucas**, 98 So.2d at 232-233.  The requirement of legislative sanction is integral to the amendment process, as the assent of two-thirds of the legislature is prescribed as a condition precedent for distinct reasons: "to guard against undue haste and temporary excitement, [and] to prevent unnecessary and frequent appeals for constitutional amendments."  **Saunders**, 34 So. at 463, (*quoting* **Constitutional Prohibitory Amendment Cases**, 24 Kan. at 711).  The requirement that two-thirds of the

legislature concur in the proposed amendment is not a superfluous requirement; indeed, "a popular vote without previous legislative sanction must be disregarded." **Constitutional Prohibitory Amendment Cases**, 24 Kan. at 711  In this case, as the stipulated facts demonstrate, the proposed amendment that was presented to the voters for approval did not have the sanction of the legislature.  More succinctly, what the electorate voted on was not what the legislature passed.  Under these circumstances, we are compelled to conclude that there was no "substantial compliance" with the "vital elements" of La. Const. art. XIII, § 1.[12]  While the error which occurred may have, indeed, been a clerical one, that error thwarted an essential step in the procedure required for enactment of amendments to the Constitution.  Furthermore, "whether the omission [of the Green amendment] was intentional or accidental, the fact remains that the Legislature, in submitting its proposal, failed to follow one of the mandatory requirements of the Constitution."  **Graham**, 3 So.2d at 771.

It is no answer to argue, as defendant does, that the language actually presented to the voters for approval – the enrolled bill without the Green amendment – was

---

[12] This case is readily distinguishable from the situation presented in **Board of Liquidation of State Debt of Louisiana v. Whitney-Central Trust & Savings Bank**, 122 So. 850, 850-51 (La. 1929), where a constitutional amendment, House Bill No. 104, was proposed by the House.  The bill passed that body with a two-thirds vote.  The bill was then sent to the Senate, where, before final passage, it was referred to the legislative bureau which reported amendments thereto.  The bill, with amendments, passed the Senate by unanimous vote.  Thereafter, the bill was returned to the House which concurred in the amendments, but only by majority vote.  Two financial institutions, which would be obligated to purchase bonds pursuant to the amendment, were made defendants in a lawsuit to compel the bond purchase.  The defendants argued that because the amended bill was not concurred in by two-thirds of the House membership, it was never legally adopted.  In rejecting the defendants' contention, the court looked to the amendments adopted by the Senate, and, finding them to be related solely to diction, grammatical construction, and punctuation, in no way affecting the substance of the bill, the court concluded that "it cannot be convincingly stated that the minds of both houses did not meet in the adoption of the bill."  **Board of Liquidation**, 122 So. at 851.  As a result, the court found that the constitutional amendment at issue was submitted to the electorate of the state in substantial compliance with the mandatory provisions of the fundamental law.  *Id.* at 852.  The critical factor that distinguishes the instant case from **Board of Liquidation** is that whereas in **Board of Liquidation** the language submitted to the voters for approval was approved by the legislature in substantial compliance with the constitution, in this case that legislative approval was lacking because there was a substantive difference between what the legislature approved and  what the electorate actually voted on.

approved by the legislature and ratified by the voters; therefore, that language should withstand attack as being "severable" from the entirety of the proposed amendment concurred in by the legislature. First, the actual language presented to the voters for approval in 1997 La. Acts 1492 was not, as defendant insists, concurred in by a two-thirds vote of both Houses of the legislature. The House, in particular, did not concur in that language, insisting instead on creating an additional exception to the general prohibition against convicted felons seeking elective office in instances where the conviction did not result in incarceration (the Green amendment). The Senate concurred in that amendment. As a result, within the legislature, there was no concurrence to a proposed constitutional amendment that did not include the Green amendment.

Further, the doctrine of severability presupposes the existence of a valid enactment, one or more portions of which are declared unconstitutional. In such instances, the relevant inquiry is "whether the unconstitutional portions of the law are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention of the legislative body enacting the law." **Perschall v. State**, 96-0322, p. 29 (La. 7/1/97), 697 So.2d 240, 260. "The test is whether the legislature would have passed the statute had it been presented with the invalid features removed." *Id.* (*citing* **Succession of Lauga**, 624 So.2d 1156, 1171-72 (La. 1993)). If the doctrine of severability was applicable here (which it is not, as there is no unconstitutional provision to excise from the proposed amendment since the error is one of omission and not addition), the case would fail the test of severability, as it is evident from the action of the House that the proposed amendment would not have passed, and in fact did not pass, without the Green amendment.

It is equally no answer to argue, as defendant does, that in interpreting constitutional provisions, it is the understanding that can reasonably be ascribed to the voting population that controls (**Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles**, 97-2233, p. 7 (La. 4/14/98), 710 So.2d 776, 780) and the voting population in this instance understood, and approved, the amendment to La. Const. art. I, § 10 in its current form, without the Green amendment. This court answered that very contention in **Graham**, and the principles announced therein remain relevant today:

> Provisions of a constitution regulating its own amendment, ... are not merely directory, but are mandatory; and a strict observance of every substantial requirement is essential to the validity of the proposed amendment. *These provisions are as binding on the people as on the legislature, and the former are powerless by their vote of acceptance to give legal sanction to an amendment the submission of which was made in disregard of the limitations contained in the constitution.*

**Graham**, 3 So.2d at 782, *quoting* 16 C.J.S., CONSTITUTIONAL LAW, § 7; see also, **Ladnier v. Mollere**, 89 So.2d 301, 307 (La. 1956) (*quoting* **Koehler v Hill**, 14 N.W. 738, 741 (IA 1883) ("'It matters not if not only every elector, but every adult person in the state, should desire and vote for an amendment to the constitution, it cannot be recognized as valid unless such vote was had in pursuance of, and in substantial accord with, the requirements of the constitution.'").

There is one final argument advanced by defendant in support of the constitutionality of the 1998 amendment to La. Const. art. I, § 10 that we must address. Despite stipulating in the district court that what the legislature passed, which included the Green amendment, "did not get put to the voters," it is now urged that the legislative history of Senate Bill No. 321 is irrelevant and that the court is precluded by the "enrolled bill rule" announced in **Marshall Field & Co. v. Clark**, 143 U.S. 649 (1892), from looking behind the enrolled bill, which appears as 1997 La.

Acts 1492, to determine whether the text of that bill differs from what the legislature actually passed.

In **Marshall Field**, which upheld the constitutionality of the Tariff Act of 1890 against a challenge that part of the bill passed by Congress was missing from the enrolled version and therefore the Act did not have the required bicameral approval, the Supreme Court adopted the evidentiary presumption that a bill signed by the leaders of the U.S. House and Senate – an enrolled bill – establishes that Congress passed the text therein "according to the forms of the Constitution," and therefore it "should be deemed complete and unimpeachable." **Marshall Field**, 143 U.S. at 672-73.

Defendant urges this court to adopt and follow the federal evidentiary rule in the present case. We decline the invitation to do so, finding that the rule has no application when the issue that is presented for resolution is whether a constitutional amendment was passed in accordance with the dictates of the Louisiana Constitution. In fact, we need look no further than the cases cited by defendant to find support for the conclusion that the court has the power, and the responsibility, to look beyond the enrolled bill to determine whether there has been compliance with the mandatory procedural requirements of La. Const. art. XIII, § 1. For example, in **Board of Liquidation**, this court, when confronted with the suggestion that a bill proposing a constitutional amendment was "never legally adopted, because the bill as amended in the Senate was not concurred in by two-thirds of the membership of the House," looked behind the enrolled bill to the journals of both houses in order to examine the substance of the Senate amendments to determine whether there was in fact a meeting of the minds of both houses in the adoption of the bill. *Id.*, 122 So. at 851. In doing so, the court remarked:

> The general rule is that the question of whether a constitutional amendment has been legally adopted by the Legislature and approved by the people is for the courts to investigate and determine. **Boyd v. Olcott**, 102 Or. 327, 202 P. 431. The rule, we think, necessarily, authorizes the court upon an objection like the one here to inquire into the question of whether the changes in the proposed amendment are formal or substantial.

**Board of Liquidation**, 122 So. at 851. See also, **Lucas**, 98 So.2d at 231, in which the court looked behind the enrolled bill, to the reengrossed House bill, to determine if the Senate received and passed the House bill, as amended, by a two-thirds vote.

The rule in Louisiana, acknowledged by defendant, is that while a presumption of regularity is generally accorded legislative proceedings, such a presumption is rebuttable. **State v. Stirgus**, 437 So.2d 249, 251 (La. 1983). We find no reason to deviate from that well-settled rule, especially when the question presented is one as important and fundamental as that presented here: whether there has been substantial compliance with the mandatory requirements of La. Const. art. XIII, § 1, in effecting an amendment to the Louisiana Constitution. In this case, we have a clear and affirmative showing, in the form of a stipulation (which the parties appropriately made given the facts and circumstances), that the enactment process did not conform with the constitutional requirements for promulgation of an amendment to the Constitution. Under these circumstances, and for the foregoing reasons, we find the district court was correct in declaring the 1998 amendment to La. Const. art. I, § 10 null and void.

## CONCLUSION

What this court said in 1941, in delivering its opinion in **Graham**, bears repetition today:

> The reluctance of the Court to declare an ordinary enactment of the Legislature void because it is in conflict with the Constitution, is intensified in a situation like this which requires the Court to declare an attempted constitutional amendment invalid, because it was not proposed in conformity to the fundamental law. In the determination of the difficult and delicate questions presented, this Court is animated solely by the desire to discharge its solemn duty to enforce the Constitution as the paramount law – a law which is as binding on the Court as it is on the Executive Officers, the members of the Legislature, and the people themselves.

**Graham**, 3 So.2d at 784.

While the result of our decision will be to broaden the scope of persons eligible to seek public office, that decision is grounded solely and firmly in the constitution, not in evaluating the policy or wisdom of law. Through Article XIII, § 1, the Constitution prescribes the means by which an amendment thereto can be effected. The procedure described therein and the requirements thereof, are not technicalities, but rather are safeguards to ensure that our state's basic, fundamental legal document is altered only in accordance with the procedure prescribed.

For the reasons assigned, therefore, we find that 1997 La. Acts 1492, which attempted to amend La. Const. art. I, § 10, is null and void because it was not constitutionally adopted, and we affirm the decision below.[13]

**AFFIRMED.**

---

[13] We expressly decline to comment on the retroactive application of the decision herein, preferring to address the effect of the invalidity of the constitutional amendment on a case by case basis, if the necessity arises. Issues of prescription, the time limitations imposed by election law, the finality of judgments and mootness have to be addressed in any potential subsequent litigation.

01/27/2016

# SUPREME COURT OF LOUISIANA

# NO. 2015-CA-1750

# DERRICK SHEPHERD

# VERSUS

# THOMAS SCHEDLER, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF LOUISIANA, & JAMES "BUDDY" CALDWELL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF LOUISIANA, & PAUL D. CONNICK, JR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 24TH JUDICIAL DISTRICT, PARISH OF JEFFERSON, STATE OF LOUISIANA

# ON APPEAL
# FROM THE NINETEENTH JUDICIAL DISTRICT COURT
# FOR THE PARISH OF EAST BATON ROUGE

**GUIDRY, J., dissents and assigns reasons.**

I respectfully dissent from the majority opinion with regard to the plaintiff's standing, because I do not find he has an interest that "is sufficiently affected so as to ensure that a justiciable controversy is presented to the court." *In re Melancon*, 05-1702, p. 9 (La. 7/10/06), 935 So.2d 661, 668. In my view, the entirety of the 1997 amendment to La. Const. art. I, § 10 need not fall as the result of the omission of a second exception to the general prohibition on unpardoned convicted felons running for election contained in La. Const. art. I, § 10(B). As the majority opinion notes, our focus should be on whether it is possible to uphold the constitutional amendment, and that every reasonable presumption both of law and fact will be considered in favor of upholding the amendment, unless an illegality appears beyond a reasonable doubt. Slip op., p. 17 (quoting *Bd. of Liquidation of State Debt of Louisiana v. Whitney-Central Trust & Savings Bank*, 122 So. 850, 851 (La. 1929)).

Here, the legislature intended to present to the electorate an amendment that clarified the right to vote but also disqualified convicted felons from seeking or

1

holding public office within a certain time period, a restriction not previously found in the constitution. *See* 1997 La. Acts 1492; *see also* La. Const. art. I, §§ 10(B)(1) and (2); Comment, *Voting and Election Law in the 1974 Constitution*, 46 La. L. Rev. 1253 (1986). As the majority notes, the Senate's version passed with more than a two-thirds vote, providing for an exception to the general prohibition when the person seeking office has served his sentence and fifteen years has elapsed from the date of the completion of the original sentence. Senate Bill No. 321. This exception would apply regardless of whether the person was actually incarcerated or placed on probation. In the House, a second exception was created to apply when the person seeking office has been convicted of a felony, has not been incarcerated, but instead has received probation, identified as the Green amendments by the majority. In such case, the person seeking office shall be permitted to qualify upon completion of his probation. Slip Op., pp. 3-4. As the majority notes, both exceptions, including the fifteen-year period for convicted felons actually incarcerated, were approved by more than a two-thirds vote of the House. *Id.*, p. 4. The Senate then also approved the Green amendments. *Id.* Further, although the exception for convicted felons sentenced only to probation was omitted from Act 1492, and thus was not presented to the electorate, the Senate's original exception, which because of its greater scope applied to convicted felons who had been incarcerated, was approved by the electorate. Thus, the so-called fifteen-year cleansing period for convicted felons who had been sentenced to incarceration, was approved by the requisite two-thirds of the House and Senate, as well as the electorate. In effect then, the general prohibition on felons seeking office in La. Const. art. I, §§ 10(B)(1) and (2), as well as the exception for those felons who had been incarcerated and fifteen years had elapsed since the completion of their sentence, complied with the procedural requirements of La. Const. art. XIII, § 1. The majority concedes as much. *See* Slip op., p. 24.

2

Here, under the original Senate bill, the bill as amended by the House, which amendments were approved by the Senate, and the version set forth in Act 1492, the plaintiff was not eligible to run for office because he had been sentenced to incarceration after having been convicted of a felony, and fifteen years had not yet elapsed since the completion of his original sentence. *See Connick v. Shepherd*, 15-582 (La. App. 5 Cir. 9/24/15), 176 So.3d 1129, *writ denied*, 15-1763 (La. 9/30/15), ___ So.3d ___. Thus, the electorate and both the House and Senate were of a single mind that persons in the plaintiff's position should be prohibited from seeking elective office. In every version considered by the House, Senate, and electorate, there is no question the intent was to prohibit convicted felons from seeking or holding public office within certain time periods. *See* La. Const. art. I, § 10(B)(1). In my view then, the plaintiff has no true interest in challenging the validity of the constitutional amendment, because under the actual amendment ratified by the electorate, including the general prohibition against unpardoned felons seeking office in Art. I, § 10(B)(1), and the fifteen-year cleansing period in La. Const. art. I, §10(C), as well as the Green amendments he asserts should have been but were not presented to the voters, he was not eligible to qualify to seek elective office. Nevertheless, the majority permits this plaintiff, who would be ineligible to seek office in any case, to effect the eventual dismantling of the Legislature's and the electorate's considered view restricting the scope of persons qualified to seek public office. The majority should not have recognized this particular plaintiff's standing to challenge the constitutional validity of the 1997 amendments to La. Const. art. I, § 10.

01/27/2016

# SUPREME COURT OF LOUISIANA

# NO. 2015-CA-1750

# DERRICK SHEPHERD

# VERSUS

# THOMAS SCHEDLER, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE FOR THE STATE OF LOUISIANA, & JAMES "BUDDY" CALDWELL, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE STATE OF LOUISIANA, & PAUL D. CONNICK, JR., IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 24TH JUDICIAL DISTRICT, PARISH OF JEFFERSON, STATE OF LOUISIANA

# ON APPEAL
# FROM THE NINETEENTH JUDICIAL DISTRICT COURT
# FOR THE PARISH OF EAST BATON ROUGE

**CRICHTON, J., concurs and assigns additional reasons**:

I concur in the result reached by the majority in this case. However, I write separately to emphasize that, like the vast majority of the citizens of the state of Louisiana, I believe that convicted felons should be disqualified from the electoral process. Through their established criminality and felonious conduct, in my view, they have unconditionally forfeited their right to seek the sacred trust of holding public office. However, in compliance with our solemn oaths, we are duty-bound to interpret and apply the Louisiana Constitution, which mandates that the Legislature follow the proper process for the enactment of a constitutional amendment. In this instance, application of article XIII, § 1 of the Louisiana Constitution leads me to conclude that, as the opinion points out, what the citizens of Louisiana voted on was not what the Louisiana Legislature enacted. The Legislature can, if it chooses to do so, once again address this issue in order to rectify this troublesome result.