STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0872

SLAYDEN CARPENTER AND SYDNEE HAWKINS

VERSUS

DEBORAH THOMAS, PROGRESSIVE PALOVERDE INSURANCE
COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

*CONSOLIDATED WITH*

NO. 2022 CA 0873

DEBORAH THOMAS, DOROTHY GIBBS AND PATRICIA C. COLEMAN

VERSUS

SLAYDEN CARPENTER AND STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND PROGRESSIVE SECURITY INSURANCE
COMPANY

*Judgment Rendered:* **MAR 1 3 2023**

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C667108 c/w C669571

The Honorable Trudy M. White, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Benjamin B. Treuting<br>Baton Rouge, Louisiana | Counsel for Appellants<br>Dorothy Gibbs and<br>Patricia C. Coleman |
| Casey W. Moll<br>John D. Sileo<br>New Orleans, Louisiana | |
| Charles F. Wartelle<br>Hammond, Louisiana | Counsel for Appellant<br>Deborah Thomas |

J. Hester, concurs

Brett M. Bollinger
Brad D. Ferrand
Jeffrey E. McDonald
L. Peter Englande
Covington, Louisiana

Matthew A. Zifle
Covington, Louisiana

Counsel for Appellee
Catfish Queen Partnership in
Commendam d/b/a Belle of Baton
Rouge Casino

\* \* \* \* \* \* \* \*

**BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.**

**THERIOT, J.**

Plaintiffs, Deborah Thomas, Dorothy Gibbs, and Patricia Coleman (collectively, "Appellants"), appeal from a judgment of the trial court granting summary judgment and a motion to strike in favor of defendant, Catfish Queen Partnership in Commendam d/b/a Belle of Baton Rouge Casino ("Catfish Queen"), and dismissing the claims raised by all parties against Catfish Queen with prejudice. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On February 7, 2018, Slayden Carpenter was operating a motor vehicle and traveling southbound on South River Road, near its intersection with France Street, in East Baton Rouge Parish. Sydnee Hawkins was a guest passenger in Carpenter's vehicle. At approximately the same time and location, Deborah Thomas, Dorothy Gibbs, and Patricia Coleman were traveling in a vehicle operated by Thomas. Thomas was attempting to exit the parking garage owned by Catfish Queen and enter South River Road. Thomas entered the roadway directly into the path of Carpenter's vehicle, and the vehicles collided. As a result of this accident, all parties complained that they sustained personal injuries.

On March 9, 2018, Carpenter and Hawkins filed a petition for damages against Thomas, Progressive Paloverde Insurance Company ("Progressive") as Thomas' insurer,[1] and State Farm Mutual Automobile Insurance Company ("State Farm") as Carpenter's insurer, alleging that Thomas exited the parking garage directly into the path of Carpenter's vehicle. On May 21, 2018, Appellants filed a separate petition for damages against Carpenter, Progressive, and State Farm, alleging that Carpenter left the roadway and struck Thomas' vehicle, injuring Appellants. On November 2, 2018, State Farm filed an unopposed motion to consolidate both suits, which was granted by the trial court.

---

[1] Carpenter and Hawkins improperly named Progressive in their petition for damages. As noted in its answer, Progressive is correctly named as Progressive Security Insurance Company.

The record contains various filings wherein certain parties dismiss other parties, raise cross claims, and set forth a reconventional demand. However, pertinent to this appeal, Appellants ultimately added Catfish Queen as a defendant, asserting that the parking garage is negligently designed and constructed in violation of sight distance standards in the City of Baton Rouge Unified Development Code ("UDC") and the American Association of State and Highway Transportation Officials ("AASHTO") "Green Book," which is referenced in La. R.S. 48:35(C). Appellants allege that, due to the limited sight line, exiting vehicles must pull beyond the curb of the road in order to observe northbound traffic, creating a hazardous situation.

Thereafter, Catfish Queen filed a motion for summary judgment, seeking the dismissal of all claims against it on the basis that Thomas was solely at fault for causing the automobile accident due to her failure to yield the right-of-way and there was no evidence establishing that Catfish Queen caused the accident at issue. State Farm opposed the motion, contending that while the evidence indicates that Thomas is at fault in the accident, there is also evidence that various sight deficiencies and obstructions created by Catfish Queen's structures may have contributed to the cause of the accident. Appellants also opposed the motion, contending that a solid brick wall owned by Catfish Queen created a vision obstruction that blocks the view of drivers exiting the parking garage and is less than one-half of the minimum sight distance requirements set forth by the AASHTO. In support of their arguments concerning sight distance requirements, Appellants relied on the expert affidavit and report of V.O. "Dean" Tekell, Jr., P.E., P.T.O.E. Appellants further contended that, even if Thomas bears some fault for the accident, under Louisiana's comparative fault regime, there is no absolute bar to recovery for Catfish Queen's negligence in creating the vision obstruction.

4

Catfish Queen filed a reply memorandum in support of summary judgment wherein it reiterated the arguments raised in its original memorandum in support of its motion for summary judgment and also challenged Tekell's expert opinion, claiming the opinions were misleading, deceptive, and inapplicable to the circumstances herein. On March 10, 2022, Catfish Queen also filed a motion to strike Tekell's expert opinions pursuant to La. C.E. arts. 702 and 403, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993), and *State v. Foret*, 628 So.2d 1116 (La. 1993). Appellants opposed the motion to strike on March 14, 2022, arguing that Tekell is clearly qualified as an expert of traffic engineering and that the Louisiana Administrative Code and Revised Statutes require the use of the AASHTO guidelines in determining sight distance requirements at all intersections.

After a hearing on March 15, 2022, the trial court orally granted the motion for summary judgment and the motion to strike. The trial court signed a judgment in conformity with these rulings on March 29, 2022, and dismissed all claims made by all parties against Catfish Queen. From this judgment, appellants appeal, averring that the trial court erred in:

(1) Granting summary judgment when it made credibility determinations, weighed evidence, and made findings of fact;

(2) Granting summary judgment when it failed to consider relevant, competent, and unobjected to summary judgment evidence; and

(3) Granting a motion to strike when it was filed in the context of a motion for summary judgment.

## DISCUSSION

### *Assignment of error No. 3 – Motion to Strike*

The motion to strike was removed as a means of challenging the admissibility of documents filed in connection with a motion for summary

judgment with the revision of La. C.C.P. art. 966 by 2015 La. Acts No. 422, effective January 1, 2016. Pursuant to these amendments, La. C.C.P. art. 966(D)(2) states that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." Comment (k) of La. C.C.P. art. 966 states that "[966(D)(2)] changes prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment and [this article] does not allow a party to file that motion." The intent of Article 966(D)(2) was to make mandatory that any objection to a document filed in support of or in opposition to a motion for summary judgment must be objected to in a timely filed opposition or reply memorandum and not in a "motion to strike" or other pleading. *Horton v. St. Tammany Fire Prot. Dist. #4*, 2021-0423, p. 8 (La. App. 1st Cir. 12/30/21), 340 So.3d 994, 999; *Adolph v. Lighthouse Property Insurance Corp.*, 2016-1275, p. 6 (La. App. 1st Cir. 9/8/17), 227 So.3d 316, 319-20.

Nevertheless, the characterization of a pleading by the litigant is not controlling and the duty of the courts is to look through a pleading's caption to ascertain its substance and do substantial justice to the parties. See *Greene v. Succession of Alvarado*, 2015-1960, p. 29 (La. App. 1st Cir. 12/27/16), 210 So.3d 321, 339. Thus, regardless of Catfish Queen's decision to caption the motion as a "Motion to Strike," the substance of the motion is clearly a motion to challenge the admissibility of the expert pursuant to La. C.C.P. art. 1425, which is permissible in the context of summary judgment. See *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 14 (La. 2/29/00), 755 So.2d 226, 235 (adopting the *Daubert* standards for admissibility of expert opinion evidence at the summary judgment stage.); see also *Adolph*, 2016-1275, at p. 7, 227 So.3d at 320 ("[T]he only proper procedure to challenge the qualifications of an expert who has

6

prepared an affidavit in opposition to a motion for summary judgment is pursuant to La. C.C.P. art. 1425.").

Importantly, Catfish Queen also challenged the admissibility of Tekell's opinions in its timely filed reply memorandum. See La. C.C.P. art. 966(D)(2). While Catfish Queen did not explicitly state it "objected" to Tekell's opinions in its reply, Catfish Queen did state that Tekell's opinions were misleading, deceptive, and inapplicable to the circumstances herein. cf. *Aucoin v. Larpenter*, 2020-0792, pp. 17-18 (La. App. 1st Cir. 4/16/21), 324 So.3d 626, 640, *writ denied*, 2021-00688 (La. 9/27/21), 324 So.3d 87 (finding that it is not in compliance with La. C.C.P. art. 966(D)(2) to raise an evidentiary objection through a motion in limine instead of a timely filed opposition). Accordingly, we will review the motion challenging the admissibility of Tekell's opinion under La. C.C.P. art. 1425 and the standard for determining the admissibility of expert testimony that was established by the United States Supreme Court in *Daubert*, adopted by the Louisiana Supreme Court in *Foret*, and which is now codified in La. C.E. art. 702.

At the outset, we note that although the trial court ultimately concluded that Tekell's opinions are not relevant, this conclusion does not conform to the requirements of La. C.C.P. art. 1425(F) or reflect that the trial court conducted an analysis of the *Daubert* factors. Pursuant to Article 1425(F)(3), if the trial court issues a ruling on the motion at the conclusion of the contradictory hearing, the court *shall* recite orally its findings of fact, conclusions of law, and reasons for judgment. Failure to comply with this provision is legal error; as such, we must review the admissibility of Tekell's opinion *de novo*.[2] *Allen v. Eagle Inc.*, 2022-

---

[2] To the extent that Appellants complain on appeal that the procedural requirements of Article 1425 were not complied with because they did not receive formal service of the motion or notice of a hearing on the motion, and the motion was untimely filed, those objections are waived. Appellants counsel filed an opposition to the motion, fully participated in the hearing on the motion, and at no time did counsel object to any improper procedure. See *Shepherd v. Schedler*, 2015-1750 (La. 1/27/16), 209 So.3d 752, 777 (on rehearing); *see also* Uniform Rules – Courts of

7

0386, 2022-0387, pp. 8-9 (La. App. 4th Cir. 8/10/22), 346 So.3d 808, 814, *writ denied,* 2022-01373 (La. 11/16/22), 349 So.3d 998; see generally *Robertson v. Doug Ashy Building Materials, Inc.,* 2010-1552, p. 23 (La. App. 1st Cir. 10/4/11), 77 So.3d 339, 355, *writ denied,* 2011-2468 (La.1/13/12), 77 So.3d 972 (finding a legal error when the trial court failed to conduct a *Daubert* analysis and evaluate the relevant reliability factors prior to excluding an expert's evidence).

Louisiana Code of Evidence article 702(A) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

To ensure reliability, *Daubert* requires that the expert's opinions be grounded in methods and procedures of science, rather than subjective belief or unsupported speculation. Thus, before expert testimony is admitted, the court must make a preliminary assessment that the reasoning or methodology underlying the testimony is scientifically valid and can be applied to the facts at issue. *Daubert,* 509 U.S. at 589-93, 113 S. Ct. at 2795-97; *Thompson v. Transocean Offshore Deepwater Drilling, Inc.,* 2019-0440, pp. 5-6 (La. App. 1st Cir. 2/21/20), 293 So.3d 80, 86, *writ denied,* 2020-00802 (La. 10/14/20), 302 So.3d 1115. Failure to qualify as an expert pursuant to the introductory paragraph of Article 702(A) or failure of the testimony to meet any of the indicia of reliability or relevancy set

Appeal, Rule 1-3 ("Courts of Appeal will only review issues which were submitted to the trial court[.]").

forth in Article 702(A)(1)-(4) will render the testimony inadmissible. *Blair v. Coney*, 2019-00795, p. 7 (La. 4/3/20), 340 So. 3d 775, 780.

The following illustrative considerations may be used to determine whether the reasoning and methodology underlying expert testimony is scientifically valid and can properly be applied to the facts at issue: (1) whether the expert's theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94, 113 S. Ct. at 2796-97. The ultimate determination of the admissibility of expert testimony under La. C.C.P. art. 702 "turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue." *Cheairs v. State ex rel. Department of Transportation and Development*, 2003-0680, p. 8 (La. 12/3/03), 861 So.2d 536, 541-542.

With these precepts in mind, we reviewed the admissibility of Tekell's affidavit, report, and testimony. Through its motion, Catfish Queen seeks to exclude Tekell's affidavit, report, and testimony because his opinions "are not based on accurate and sufficient facts and data, are not the product of reliable methodology, run contrary to...Thomas' own testimony, and serve only to prejudice Catfish Queen." Catfish Queen alleges that as it pertains to the UDC, Tekell utilized a standard which is inapplicable when evaluating the sight distance relative to the view allowed for oncoming traffic because it applies only when there is on-street parking spaces near a driveway. Catfish Queen also avers that the AASHTO guidelines utilized by Tekell are inapplicable because the AASHTO does not apply to private driveways such as the one in this case. Finally, Catfish Queen contends that Tekell's opinions regarding sight distances are irrelevant considering Thomas' failure to stop and yield the right-of-way before entering the

9

roadway and should be excluded under La. C.E. art. 403, which allows relevant evidence to be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Catfish Queen did not attach any exhibits to its motion, nor did it attempt to admit any evidence in support of its motion into the record at the hearing.

Through their opposition to the motion, Appellants contend that Tekell is clearly qualified as an expert due to his education and experience. Appellants argue that the AASHTO references considerations which must be utilized when designing driveways that connect to a public roadway, namely that sight distance is an important design control for driveways and insufficient sight distances should be avoided. Appellants further maintain that pursuant to the Louisiana Administrative Code ("LAC"), local roads with a thirty-mile-per-hour speed limit should have a minimum stopping sight distance of 200 feet. Additionally, Appellants contend the LAC provides that private driveways must also be constructed so that drivers approaching or using them will have adequate sight distances in all directions. Appellants also contend that the LAC requires Department of Transportation and Development ("DOTD") standards to be applied and suggests a traffic impact study should be conducted when a large commercial development is constructed with an access point within .25 miles of a state highway, as in the instant case.[3] Despite this, a traffic impact study was waived by the City of Baton Rouge.

Appellants ultimately argue that Catfish Queen contends that because the Baton Rouge Code of Ordinances and the UDC do not reference a specific sight distance or stopping distance, the state regulatory framework should be ignored. Appellants further point out that Catfish Queen fails to put forth its own expert to

---

[3] Appellants contend that, while South River Road is a "spur" under the administrative purview of the City, it is located approximately 700 feet south of Louisiana Highway 70, a distance less than .25 miles.

10

support the notion that no sight distance standards should apply to the driveway at issue in this case. Finally, Appellants contend that Tekell references the UDC's sight distance triangle solely "for comparison purposes."

In support of their opposition, Appellants attached: an excerpt from the AASHTO Green Book, an excerpt titled Evaluation and Modification of Sight Distance Criteria Used by TxDOT, an excerpt from the LAC, an excerpt from the 2013 DOTD Access Connections Policy, an excerpt from the National Cooperative Highway Research Program's Guide for Geometric Design of Driveways, and an email exchange between the chief traffic engineer of Baton Rouge and the project manager for the construction of the Belle of Baton Rouge Casino garage where the accident occurred. All of these exhibits were admitted into evidence at the hearing on the motion.[4]

Tekell is a registered professional engineer in civil engineering with a specialty in the field of traffic engineering and, since 1998, has been the owner and principal engineer for Dean Tekell Consulting, LLC. According to Tekell's affidavit and his CV, he has provided consulting services in nearly 200 cases and has often been qualified as an expert in the field of road and highway design and traffic engineering. Catfish Queen has not brought forth any evidence to challenge these qualifications. Based on the record before us, we find that Tekell meets the requirements of the introductory paragraph of Article 702(A). Thus, Tekell may only be disqualified as an expert witness if his opinions herein fail to meet any of the indicia of reliability or relevancy set forth in Article 702(A)(1)-(4). See Blair, 2019-0795 at p. 7, 340 So.3d at 780.

Before forming his opinion, Tekell performed an on-site survey of the location of the accident. In doing so, he took measurements and photographs of

---

[4] At the hearing, counsel for Catfish Queen objected to these documents "as to relevancy," but they were admitted into evidence.

11

the area. Tekell also reviewed a still image of Thomas exiting the garage,[5] surveillance footage from the garage, the response to a public records request regarding crash reports in the area of the accident site, and the crash report from the accident herein. While inspecting the accident site, Tekell noted that the driveway was set back approximately nine feet from the curb of the roadway and there is a structure that provides support to an overhead walkway which limits the line of sight for vehicles exiting the garage and looking to the left for southbound traffic. Tekell stated that this structure merges into a nearby exterior wall and creates a "solid brick barrier bordering the southbound lane" of the roadway. Tekell then used the methodology outlined in the Green Book to determine that both the line of sight for an exiting vehicle and the stopping distance for vehicles traveling in the southbound lane of the roadway were insufficient.

Upon our *de novo* review of the motion, the memoranda, the evidence, and the hearing transcript, in particular the LAC regulations regarding stopping sight distances for local roads, we do not find it appropriate to exclude Tekell's opinions at this stage of the litigation. Additionally, while Catfish Queen avers that La. R.S. 48:35 only requires the state highway system to conform to the AASHTO guidelines, subsection (C) of the statute provides that "so far as possible," minimum safety guidelines for roads, highways, and streets under the jurisdiction of any political subdivision of this state and not in the state-maintained highway system, should conform to the AASHTO guidelines. In making this finding, we note that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798; *Blair v. Coney*, 2019-00795, at p. 9, 340 So. 3d at 781. Moreover, while

_____

[5] Tekell's report states that he reviewed an image of Carpenter exiting the garage. As Carpenter was the driver traveling southbound on South River Road, and not the driver operating the vehicle that exited the parking garage, it would appear this was a mistake.

Tekell does refer to UDC regulations that do not apply to the specific case herein, his affidavit states that he did this analysis because he was asked to do so for comparative purposes, and the affidavit and report expressly acknowledge that they are not applicable under these facts.

We find that to exclude Appellants' expert at the summary judgment stage would improperly usurp the function of the factfinder at trial, which is to weigh the evidence and expert opinions in order to determine whether the plaintiffs have met their burden of proving causation of the accident herein. See *Independent Fire*, 99-2181, 99-2257, at p. 17, 755 So.2d at 236 (When utilizing *Daubert* standards in the context of summary judgment, the court must "focus solely on the principles and methodology, not on the conclusions they generate.").[6]

### *Assignments of Error Nos. 1 and 2 - Motion for Summary Judgment*

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Murphy v. Savannah*, 2018-0991, p. 6 (La. 5/8/19), 282 So.3d 1034, 1038 (per curiam). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). However, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. La. C.C.P. art. 966(D)(2).

---

[6] Our finding herein does not prevent any party from later challenging the admissibility of an expert or presenting conflicting expert evidence.

13

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Leet v. Hospital Service District No. 1 of East Baton Rouge Parish*, 2018-1148, p. 7 (La. App. 1st Cir. 2/28/19), 274 So.3d 583, 587. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. *Collins v. Franciscan Missionaries of Our Lady Health System, Inc.*, 2019-0577, p. 4 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 194, *writ denied*, 2020-00480 (La. 6/22/20), 297 So.3d 773. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. *Id.* at 194-95. A fact is "material" when its existence or nonexistence may be essential to a plaintiffs cause of action under the applicable theory of recovery. *Id.* at 195. Simply put, a "material" fact is one that would matter at a trial on the merits. *Id.* Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. *Id.*

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere

14

conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. *Guillory v. The Chimes*, 2017-0479, p. 4 (La. App. 1st Cir. 12/21/17), 240 So.3d 193, 195. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Larson v. XYZ Insurance Co.*, 2016-0745, p. 7 (La. 5/3/17), 226 So.3d 412, 417.

In a personal injury suit, liability is determined under the duty-risk analysis, which requires that the plaintiffs prove (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant failed to conform his conduct to the appropriate standard of care, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs' injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiffs' injuries, and (5) actual damages. *Brewer v. J.B. Hunt Transport, Inc.*, 2009-1408, 2009-1428, p. 14 (La. 3/16/10), 35 So.3d 230, 240. If the plaintiffs fail to establish any one of these elements as to a particular defendant, their claims against that defendant must fail and the plaintiffs cannot recover against them. *Walker v. City of Independence Police Dep't*, 2018-1739, 2018-1740, p. 8 (La. App. 1st Cir. 2/7/20), 296 So.3d 25, 31.

As it pertains to Thomas' actions, La. R.S. 32:124 provides that the driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. However, Thomas and Carpenter both allege, and State Farm argues, that a visual obstruction created by Catfish Queen contributed to the accident. Thus, the parties opposing the motion for summary judgment in this case assert that the Catfish Queen bears at least some fault in this matter for breaching its duty not to

15

obstruct the vision of passing motorists. See generally *Hakim v. Albritton*, 552 So.2d 548, 551 (La. App. 2d Cir. 1989)(Landowners owe a duty not to obstruct the vision of passing motorists.).

The allocation of fault is a factual finding. Where reasonable minds can differ as to the comparative fault of the parties, summary judgment is inappropriate. *Smith v. Howell*, 2019-452, p. 8 (La. App. 3rd Cir. 12/30/19), 286 So.3d 564, 569. Louisiana's comparative fault statute, La. C.C. art. 2323, requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person. The Louisiana Supreme Court listed the following factors which should be considered by a court in determining the degree of fault assigned to each party found to be negligent under La C.C. art. 2323: (1) the level of each actor's awareness of the danger; (2) the magnitude of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the relative capacity of the actors; and (5) the presence of extenuating circumstances which might justify hasty action. *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La. 1985).

In support of its motion for summary judgment, Catfish Queen offered excerpts from Thomas' deposition. In opposition to the motion, State Farm offered Carpenter's affidavit, excerpts from Carpenter's deposition, and Tekell's affidavit, curriculum vitae, and expert report. Additionally, in opposition to the motion for summary judgment, Appellants offered excerpts from Thomas' deposition, a picture of the location of the accident on South River Road, excerpts from Carpenter's deposition, and Tekell's affidavit, curriculum vitae, and expert report.

Through its motion, Catfish Queen contends that the plaintiffs do not have any evidence establishing that Catfish Queen's structure caused the accident as there is no evidence that the accident occurred because Thomas' view was

16

obstructed by a wall. Catfish Queen asserts that the evidence, surveillance video, and deposition testimony herein "clearly" demonstrate that Thomas failed to stop at the stop sign and entered the cross-street while it was unsafe to do so. Moreover, Catfish Queen relies on Thomas' own testimony based on a picture submitted by Catfish Queen to maintain that she admitted that drivers exiting the garage do not need to enter the roadway in order to see oncoming traffic and that she did not need to enter the roadway in order to see Carpenter's vehicle. Finally, Catfish Queen asserts that the accident would not have occurred if Thomas had yielded the right-of-way to Carpenter and stopped her vehicle at the stop sign before entering the roadway.

Conversely, State Farm contends that while the surveillance video indicates that Thomas is at fault for failing to yield to Carpenter's right-of-way, there is also evidence that a visual obstruction from Catfish Queen's structure may have contributed to the accident. In support of this claim, State Farm relies on Carpenter's testimony that he was unable to see Thomas' vehicle until it was in his lane of travel. Relying on Tekell's affidavit and expert report, State Farm contends that Catfish Queen's structures obscure the driveway and exiting traffic from the view of drivers on the roadway, and that the driveway placement does not satisfy the sight distance triangles for driveways as they appear in Appendix A of the UDC. State Farm further contends that because the allocation of fault is a factual finding, summary judgment is inappropriate when reasonable minds can differ about the allocation of fault to each party. Ultimately, State Farm asserts that genuine issues of material fact exist as to whether Catfish Queen breached its duty not to obstruct or limit the vision of motorists traveling on River Road and whether the Casino failed to take appropriate actions to provide sufficient warning to passing motorists of vehicles exiting the garage.

17

Additionally, in their opposition, Appellants contend that while the UDC does not specifically reference the AASHTO as La R.S. 48:35 does, the statute applies to all roadways in the state, including those under the control of political subdivisions of the state. They aver that both Thomas and Carpenter testified that a visual obstruction near the exit of the garage prevented them from seeing the other vehicle, and Catfish Queen has a duty not to obstruct the vision of passing motorists. They also point to the fact that both Thomas and Carpenter testified that the accident occurred very suddenly. Appellants also maintain that the picture presented by Catfish Queen at Thomas' deposition was taken in front of the wall that creates a visual obstruction, invalidating her testimony that she could have seen Carpenter's vehicle. Finally, Appellants contend that although the essence of Catfish Queen's argument for dismissal is that Thomas testified that she entered the roadway without yielding the right-of-way, Louisiana's comparative negligence regime does not provide for an absolute bar to recovery in such a circumstance.

In its motion and supporting documents, Catfish Queen sufficiently pointed out an absence of factual support for one or more elements essential to the Appellants' claim, namely that they had not provided any evidence that a visual obstruction contributed to the accident when it was clear that Thomas failed to yield the right-of-way. The burden of proof then shifted to the parties opposing the motion to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966D(1). To meet that burden, the Appellants and State Farm rely on Tekell's affidavit and the testimony of Carpenter and Thomas.

Appellants and Carpenter all contend that there is a wall near the parking garage exit that limits the view of both passing motorists and motorists who are exiting the garage. Conversely, Catfish Queen avers that there is no proof of this

18

obstruction, and the surveillance video and Thomas' deposition demonstrate that she is solely responsible for causing the accident. After reviewing all of the evidence filed in support of and in opposition to the motion for summary judgment, and mindful of our obligation not to make credibility determinations or weigh the evidence on summary judgment, we find there are genuine issues of material fact which preclude summary judgment herein, and the trial court erred in granting summary judgment.

## CONCLUSION

For the above and foregoing reasons, we reverse the trial court's judgment, granting Catfish Queen Partnership in Commendam d/b/a Belle of Baton Rouge Casino's motion to strike and motion for summary judgment and dismissing all claims against Catfish Queen Partnership in Commendam d/b/a Belle of Baton Rouge Casino with prejudice. This matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellee, Catfish Queen Partnership in Commendam d/b/a Belle of Baton Rouge Casino.

**REVERSED AND REMANDED.**